Filed 3/4/13

# IN THE SUPREME COURT OF CALIFORNIA

DANIELLE BOURHIS et al.,

      Plaintiffs and Appellants,

      v.

JOHN LORD et al.,

      Defendants and Respondents.

S199887, S199889

Ct.App. 1/2 A132136, A133177

Marin County
Super. Ct. No. CIV060796

      If a corporation fails to pay its taxes, the state may suspend its corporate powers. The state may later revive those powers when the corporation pays its taxes. We must decide whether a corporation that files notices of appeal while its corporate powers are suspended may proceed with the appeals after those powers have been revived, even if the revival occurs after the time to appeal has expired. Two opinions from this court in the 1970's held that revival of corporate powers validates an earlier notice of appeal. (*Rooney v. Vermont Investment Corp.* (1973) 10 Cal.3d 351 (*Rooney*); *Peacock Hill Assn. v. Peacock Lagoon Constr. Co.* (1972) 8 Cal.3d 369 (*Peacock Hill*).) We adhere to those decisions due to principles of stare decisis. Accordingly, these appeals may proceed.

## I. PROCEDURAL HISTORY

      Danielle Bourhis and others, including Brown Eyed Girl, Inc. (Brown Eyed Girl), a California corporation, filed the underlying lawsuit for property damage against John Lord and others. Before trial, defendants learned that the state had

suspended Brown Eyed Girl's corporate powers for nonpayment of taxes. They moved in the superior court to preclude it from offering any evidence at trial. The court denied the motion contingent on the corporation's reviving its corporate powers. After it granted a motion for a nonsuit in favor of some defendants, and a jury returned a verdict in favor of another defendant, the court entered judgment in favor of all defendants on April 5, 2011. Notice of entry of judgment was served the next day. Plaintiffs, including Brown Eyed Girl, filed a notice of appeal from that judgment on May 26, 2011. On August 30, 2011, the court entered an order after judgment awarding costs and attorney fees, which was entered and served the same day. On September 13, 2011, plaintiffs, including Brown Eyed Girl, filed a notice of appeal from that order.

On December 1, 2011, defendants filed separate motions in the Court of Appeal to strike Brown Eyed Girl's notices of appeal and to dismiss those appeals because its corporate powers were still suspended. In opposition, Brown Eyed Girl presented documentation showing that its corporate powers had been revived on December 8, 2011. It argued that this revival validated its previous notices of appeal, thus making the appeal effective.

On December 29, 2011, the Court of Appeal filed orders denying both motions. Both orders included these citations: "(*Rooney v. Vermont Investment Corp.* (1973) 10 Cal.3d 351, 359; *Peacock Hill Assn. v. Peacock Lagoon Constr. Co.* (1972) 8 Cal.3d 369, 373-374; see *ABA Recovery Services, Inc. v. Konold* (1988) 198 Cal.App.3d 720, 725, fn. 2.)"

Defendants filed separate petitions for review of the orders denying the motions to dismiss the appeals. (See Cal. Rules of Court, rule 8.500(a)(1) [interlocutory order of the Ct. App. is subject to review].) We granted both petitions and subsequently consolidated the matters.

2

**DISCUSSION**

With exceptions not relevant here, "the corporate powers, rights and privileges of a domestic taxpayer may be suspended, and the exercise of the corporate powers, rights, and privileges of a foreign taxpayer in this state may be forfeited," if a corporation fails to pay its taxes. (Rev. & Tax. Code, § 23301; see also *id*., § 23301.5 [similar provision regarding the failure to file a tax return].) (All further statutory references are to the Rev. & Tax. Code.) A corporation whose powers have been suspended may apply with the Franchise Tax Board for reinstatement after satisfying its obligations. (§ 23305.) If the statutory requirements are met, the Franchise Tax Board issues a "certificate of revivor." (§ 23305.) "Upon the issuance of the certificate [of revivor] by the Franchise Tax Board the taxpayer therein named shall become reinstated but the reinstatement shall be without prejudice to any action, defense or right which has accrued by reason of the original suspension or forfeiture . . . ." (§ 23305a.)

Brown Eyed Girl purported to file notices of appeal while its corporate powers were suspended. In general, a "corporation may not prosecute or defend an action, nor appeal from an adverse judgment in an action while its corporate rights are suspended for failure to pay taxes." (*Reed v. Norman* (1957) 48 Cal.2d 338, 343.) Thus, the notices of appeal were invalid when filed. However, Brown Eyed Girl later received a certificate of revivor. When that certificate is received, as one court put it, "[t]he legal rights of a suspended corporation are then revived, as an unconscious person is revived by artificial respiration." (*Benton v. County of Napa* (1991) 226 Cal.App.3d 1485, 1490.) "In a number of situations the revival of corporate powers by the payment of delinquent taxes has been held to validate otherwise invalid prior action." (*Peacock Hill*, *supra*, 8 Cal.3d at p. 371.) We must decide whether the revival of corporate powers in this case validated the earlier notices of appeal.

3

If revival of corporate powers occurs while a valid appeal can still be taken, the question appears easy; the revival would validate a prior notice of appeal and permit the appeal to proceed. The appeal would be timely, and little purpose would be served by requiring the corporation to file another, essentially identical, notice of appeal. But appeals are subject to jurisdictional time limits. A notice of appeal must be filed within 60 days after service of the notice of entry of judgment. (Cal. Rules of Court, rule 8.104(a).) "The time to file notice of appeal, both in civil and criminal cases, has always been held jurisdictional in California." (9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 614, p. 689.) As to both appeals at issue here, this time had expired before Brown Eyed Girl's corporate powers were revived. Should the later revival validate the earlier invalid notice of appeal in this circumstance?

When it denied the motions to dismiss the appeals, the Court of Appeal cited *Rooney*, *supra*, 10 Cal.3d 351, and *Peacock Hill*, *supra*, 8 Cal.3d 369. In *Peacock Hill*, the Peacock Hill Association moved to dismiss the appeal of Peacock Lagoon Construction Co. (Construction) on the ground that Construction's corporate powers had been suspended. We refused to dismiss the appeal. Citing cases in which "it was held that the purpose of section 23301 of the Revenue and Taxation Code is to put pressure on the delinquent corporation to pay its taxes," we said that "that purpose is satisfied by a rule which views a corporation's tax delinquencies, after correction, as mere irregularities." (*Peacock Hills*, *supra*, 8 Cal.3d at p. 371.) We added that "[t]here is little purpose in imposing additional penalties after the taxes have been paid." (*Ibid.*)

*Peacock Hill* relied in part on *Traub Co. v. Coffee Break Service, Inc.* (1967) 66 Cal.2d 368, where a party had moved to set aside a final judgment in favor of a corporation whose corporate status had been suspended. The *Traub* court had "concluded that the trial court was correct in its view that a final

4

judgment is immune from the collateral attack attempted." (*Peacock Hill*, *supra*, 8 Cal.3d at p. 372.) We explained that "[i]n *Traub* we cited with approval several Court of Appeal decisions in which the corporate plaintiff was allowed to maintain a lawsuit even though it had been suspended at the time it filed its complaint. In each case, the corporation had secured reinstatement prior to the date set for trial, but after the defendant had brought the suspension to the attention of the trial court. The appellate courts reasoned that the plea of lack of capacity of a corporation because of its suspension for failure to pay taxes, is a plea in abatement which is not favored in law and must be supported by the facts at the time of the plea. In each case it was held that revival of the corporate powers before trial was sufficient to permit the corporation to maintain its action." (*Ibid.*)

The *Peacock Hill* court concluded that "as to matters occurring prior to judgment the revival of corporate powers has the effect of validating the earlier acts and permitting the corporation to proceed with the action. We are satisfied that the same rule should ordinarily apply with respect to matters occurring subsequent to judgment. . . . [¶] In the instant case, the corporate powers of Construction have been revived by the payment of taxes, and it may proceed with its appeal." (*Peacock Hill*, *supra*, 8 Cal.3d at pp. 373-374.)

Justice Mosk dissented. He agreed with the majority that section 23301's purpose was to put pressure on a delinquent corporation to pay its taxes, but, he argued, "that purpose is frustrated by permitting a delinquent corporation, merely through tardy payment of taxes, to validate all of the actions taken during its period of suspension. Under that concept the stick becomes a carrot; all incentive to avoid punitive disabilities dissolves. Upon exposure of its delinquency the corporation suffers little more than fleeting embarrassment, and, indeed, it is then rewarded by authentication of all its previous illegal acts. [¶] In the present case, for example, Construction's powers had been suspended prior to trial and

5

remained in that status until after judgment and the filing of the notice of appeal. It was not until plaintiff brought the suspension to the attention of the appellate court by its motion to dismiss the appeal that Construction at long last paid its delinquent taxes. Presumably, if plaintiff had not moved to dismiss Construction's appeal, the latter simply could have continued in its suspended status until the appeal had been decided and for an indefinite period thereafter, depending upon whether or not it was advantageous to obtain revival of its corporate powers. How the majority's holding validating the revival of all acts of this suspended corporation taken after judgment will in the future impose any significant 'pressure' upon a corporation to pay its franchise taxes is difficult to comprehend." (*Peacock Hill*, *supra*, 8 Cal.3d at p. 374 (dis. opn. of Mosk, J.).)

Justice Mosk also cited section 23305a's provision that "reinstatement shall be without prejudice to any action, defense or right which has accrued by reason of the original suspension or forfeiture . . . ." He argued that "no rights could have accrued *to* the suspended corporation during the period of original suspension — it could not lawfully function for any purpose — so that the clause necessarily refers to rights accruing *against* the suspended corporation." (*Peacock Hill*, *supra*, 8 Cal.3d at p. 376 (dis. opn. of Mosk, J.).)

In *Rooney*, this court cited *Peacock Hill*, *supra*, 8 Cal.3d 369, for the proposition that "[t]he revival of corporate powers validated the procedural steps taken on behalf of the corporation while it was under suspension and permitted it to proceed with the appeal." (*Rooney*, *supra*, 10 Cal.3d at p. 359.)

Defendants argue that *Rooney*, *supra*, 10 Cal.3d 351, and *Peacock Hill*, *supra*, 8 Cal.3d 369, are distinguishable. They correctly note that neither opinion provides precise dates or expressly states whether the revival came before or after the time limit in which to appeal had expired. Thus, defendants argue, the revival in those cases might have occurred while there was still time to appeal, which

6

would mean the court did not decide the question presented here. In both cases, however, it appears the revival came after the time limit to appeal had expired. In *Rooney*, this court stated that the revival had occurred "20 days after the suspension had been called to defendants' attention by the filing of plaintiffs' brief." (*Rooney*, *supra*, at p. 359.) Because the plaintiffs were the respondents on appeal, the court was referring to the filing of the respondents' brief. Normally, that brief would be filed well after the time limit in which to file a notice of appeal had expired, and the opinion gives no suggestion the appeal was so expedited as to make it an exception to the norm. The timing of the revival relative to the time limits is even less clear in *Peacock Hill*. There, this court merely stated that one party had moved to dismiss Construction's appeal on the ground Construction's corporate powers had been suspended, that Construction had filed a declaration opposing the motion stating it had applied for a certificate of revivor, and that, "[s]ubsequently," Construction filed a certificate of revivor that the Franchise Tax Board had issued. (*Peacock Hill*, *supra*, at p. 371.) It is possible, although it seems unlikely, that all of these events had occurred before the time in which to file a valid notice of appeal had expired.

Although the scope of *Peacock Hill* and *Rooney* is thus not entirely clear, it appears both opinions intended the rule favoring revival to be unqualified. If the revival of either case had occurred while a valid appeal could still be taken, which would have made it an easy question, surely the opinion would have so indicated. In dissent, Justice Mosk cited section 23305a's language that revival must not prejudice an "action, defense or right" that had already accrued. This citation would be relevant only if the revival had occurred after it was too late to appeal; otherwise, the appellant could simply have filed a new notice of appeal. Justice Mosk's dissent thus strongly implies that the revival came after the time limit to appeal had expired. The majority opinion in *Peacock Hill* did not specifically

7

respond to Justice Mosk's argument regarding section 23305a, but it appears the majority implicitly concluded that the section did not invalidate the appeal even if the corporate revival occurred after it was too late to appeal. Accordingly, *Peacock Hill* and *Rooney* govern.

The doctrine of stare decisis teaches that a court usually should follow prior judicial precedent even if the current court might have decided the issue differently if it had been the first to consider it. This doctrine is especially forceful when, as here, the issue is one of statutory construction, because the Legislature can always overturn a judicial interpretation of a statute. The doctrine of stare decisis is not absolute, and sometimes it is appropriate to overrule prior precedent, even precedent interpreting a statute. Nevertheless, a court should be reluctant to overrule precedent and should do so only for good reason. (*People v. Latimer* (1993) 5 Cal.4th 1203, 1212-1213.)

We see no good reason to overrule *Rooney*, *supra*, 10 Cal.3d 351, and *Peacock Hill*, *supra*, 8 Cal.3d 369. The rule stated in those cases has existed for four decades. It does not appear the rule has proven unworkable or has unduly hampered the state's ability to collect its taxes. If the rule does create serious problems, the Legislature may change it any time it wishes, something it has not done. On the other hand, good reason exists not to overrule those cases. The Revenue and Taxation Code statutes at issue here "apply to a host of factual situations involving different" kinds of corporate actions. (*People v. Latimer*, *supra*, 5 Cal.4th at p. 1214.) In the years after we decided *Rooney* and *Peacock Hill*, appellate courts have cited those cases in resolving a variety of issues concerning the suspension of corporate powers, often holding that revival of those powers validated prior actions. (E.g., *Center for Self-Improvement & Community Development v. Lennar Corp.* (2009) 173 Cal.App.4th 1543, 1552-1553; *Benton v. County of Napa*, *supra*, 226 Cal.App.3d at pp. 1490-1492.) We cannot foresee

8

exactly what effect overruling *Peacock Hill* and *Rooney* today would have in other contexts, but the effect might be substantial. In this circumstance, we believe that the Legislature should modify the rule if it is to be modified.

When the Court of Appeal denied the motions to dismiss the appeals, in addition to citing *Rooney*, *supra*, 10 Cal.3d 351, and *Peacock Hill*, *supra*, 8 Cal.3d 369, it added, "see *ABA Recovery Services, Inc. v. Konold* (1988) 198 Cal.App.3d 720, 725, fn 2." Why the court did so is apparent. A line of Court of Appeal cases has held that the running of a statute of limitations is a substantive defense that may not be prejudiced by later revival of corporate powers. (*Friends of Shingle Springs Interchange, Inc. v. County of El Dorado* (2011) 200 Cal.App.4th 1470, 1486-1487, and cases cited.) As one court explained, "The statute of limitations was a substantive defense which accrued by its running during that period of appellant's suspension, and cannot be prejudiced by revival of the suspended corporation." (*Welco Construction, Inc. v. Modulux, Inc.* (1975) 47 Cal.App.3d 69, 74.)

In *ABA Recovery Services, Inc. v. Konold*, *supra*, 198 Cal.App.3d at pages 724-725, the Court of Appeal applied the rule that revival of corporate powers does not affect the running of the statute of limitations. But the court also compared the rule regarding statutes of limitations with the rule regarding appeals: "We question why the timely filing of a notice of appeal, which is jurisdictional and cannot be waived, is a procedural act unaffected by a corporation's suspension, while the statute of limitations, which is not jurisdictional and can be waived, is a substantive defense fatal to a suspended corporation's cause of action. However, we leave the resolution of this apparent inconsistency to the Supreme Court." (*Id*. at p. 725, fn. 2.)

We acknowledge the tension between the rule articulated in the cases above regarding statutes of limitations (no retroactive revival) and the rule we are

9

affirming today regarding notices of appeal (retroactive revival). But without addressing the propriety of the statute of limitations cases, an issue not presented in this case, we believe the two approaches can be reconciled. As noted, section 23305a provides that revival "shall be without prejudice to any action, defense or right which has accrued by reason of the original suspension or forfeiture . . . ." The cases concerning statutes of limitations explain that those statutes provide a substantive defense that later revival of corporate powers cannot prejudice. But *Rooney*, *supra*, 10 Cal.3d 351, and *Peacock Hill*, *supra*, 8 Cal.3d 369, implicitly concluded that the expiration of the time to file a valid notice of appeal does not provide an "action, defense or right" within the meaning of section 23305a. This conclusion finds support in *Schwartz v. Magyar House, Inc.* (1959) 168 Cal.App.2d 182, 190, which held that being "in a position to file a default judgment" against a suspended corporation "is not a 'right' within the contemplation of" section 23305a. (See also *Center for Self-Improvement & Community Development v. Lennar Corp.*, *supra*, 173 Cal.App.4th at pp. 1553-1554 [citing *Schwartz* with approval on this point].) Similarly, being in a position to move to dismiss an untimely appeal is not a "right" under that statute. Thus interpreted, the two rules — one concerning appeals, the other concerning statutes of limitations — can coexist.

As the concurring and dissenting opinion notes, filing a timely notice of appeal is a jurisdictional requirement. Although *Rooney*, *supra*, 10 Cal.3d 351, and *Peacock Hill*, *supra*, 8 Cal.3d 369, do not discuss this point expressly, it appears the court believed that what is jurisdictionally required is that the notice of appeal be timely, not that it be filed by an active corporation. Here, the notices of appeal were timely even if invalid when filed. The *Rooney* and *Peacock Hill* court implicitly concluded that the corporation's later reinstatement made the earlier, invalid but *timely*, notices of appeal valid and still timely.

10

### III. CONCLUSION

We adhere to *Rooney*, *supra*, 10 Cal.3d 351, and *Peacock Hill*, *supra*, 8 Cal.3d 369. Accordingly, we affirm the Court of Appeal's orders denying the motions to dismiss the appeals.

**CHIN, J.**

**WE CONCUR:**

**CANTIL-SAKAUYE, C. J.**
**BAXTER, J.**
**WERDEGAR, J.**
**CORRIGAN, J.**
**LIU, J.**

11

**CONCURRING AND DISSENTING OPINION BY KENNARD, J.**

A corporation may not "appeal from an adverse judgment in an action while its corporate rights are suspended for failure to pay taxes." (*Reed v. Norman* (1957) 48 Cal.2d 338, 343.) According to the majority, that rule does not apply when, after expiration of the appeal period, the corporation's suspension is lifted. The majority reasons that the reinstatement retroactively validates a notice of appeal that the suspended corporation filed during the appeal period. I disagree. As an appellate court's jurisdiction is wholly dependent upon the *timely* filing of a *valid* notice of appeal, the consequence should be dismissal of the appeal.

In support of its holding, the majority cites two 40-year-old decisions of this court, one of them with a vigorous dissent by Justice Stanley Mosk. In my view, those two decisions were wrong then, are wrong now, and should be overruled. Because, however, those decisions may have led to some reliance by the bench and bar, I would apply the rule I propose to future cases only. This is the sole reason for my agreement with the majority's disposition.

## I. APPELLATE JURISDICTION

A party seeking to appeal must file a notice of appeal within 60 days after it is served with a notice of entry of either a judgment or an appealable order, or within 180 days after entry of judgment, whichever is earlier. (Cal. Rules of Court, rule 8.104(a)(1), (c).) Here, one of the plaintiffs, Brown Eyed Girl, Inc., filed a timely notice of appeal. But that notice was filed during suspension of the

1

corporation's powers, rights, and privileges for not paying its taxes. As this court said 55 years ago, a corporation whose rights have been suspended "for failure to pay taxes" may not appeal from an adverse judgment in a court action. (*Reed v. Norman*, *supra*, 48 Cal.2d at p. 343.) Thus, here plaintiff's notice of appeal, filed during the corporation's suspension, was invalid.

After expiration of the appeal period, the corporation paid the delinquent taxes and was reinstated. Should the rule be that the reinstatement retroactively validates the corporation's invalid notice of appeal? The majority's answer is "yes." My answer is "no," as explained below.

The filing of a timely and valid notice of appeal is a "prerequisite to the exercise of appellate jurisdiction." (*Hollister Convalescent Hosp., Inc. v. Rico* (1975) 15 Cal.3d 660, 670.) The lack of such notice deprives the reviewing court of "all power to consider the appeal on its merits," and dismissal is the consequence. (*Id.* at p. 674; *Maynard v. Brandon* (2005) 36 Cal.4th 364, 372-373; *In re Chavez* (2003) 30 Cal.4th 643, 650; see 9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 601, pp. 677-678.) That rule is also embodied in our court rules. (Cal. Rules of Court, rules 8.60(d) [appellate court may not relieve a party from the failure to file a timely notice of appeal], 8.104(b) [appellate court must dismiss the appeal if the notice of appeal is filed late].) "In the absence of statutory authorization, neither the trial nor appellate courts may extend or shorten the time for appeal [citation], even to relieve against mistake, inadvertence, accident, or misfortune [citations]." (*Estate of Hanley* (1943) 23 Cal.2d 120, 123.) No statute authorizes appellate courts to extend the appeal period for suspended corporations.

No good reason appears why a corporation's notice of appeal filed during suspension, and thus invalid, should become valid when, after expiration of the appeal period, the corporate powers are reinstated. To allow this is to vest the appellate court with jurisdiction that it lacked during the appeal period when an

2

invalid notice was filed. Such an outcome is generally unavailable irrespective of any mistake, inadvertence, or misfortune. (*Estate of Hanley*, *supra*, 23 Cal.2d at p. 123.)

## II. THIS COURT'S PRECEDENTS

The majority's decision relies on two 40-year-old decisions of this court: *Peacock Hill Assn. v. Peacock Lagoon Constr. Co.* (1972) 8 Cal.3d 369 (*Peacock Hill*), and *Rooney v. Vermont Investment Corp.* (1973) 10 Cal.3d 351 (*Rooney*). Those two decisions were wrong then, are wrong now, and should be overruled.

As the majority notes, both *Peacock Hill*, *supra*, 8 Cal.3d 369 and *Rooney*, *supra*, 10 Cal.3d 351, implicitly held that an *invalid* notice of appeal filed by a corporation suspended for failure to pay taxes is, upon reinstatement of the corporation, retroactively validated. (See maj. opn., *ante*, at pp. 6-8.) Not at all considered by the *Peacock Hill* majority, however, was this core appellate rule: The filing of a timely and valid notice of appeal is a prerequisite for appellate jurisdiction. Instead, the majority there simply cited certain cases as holding that in "a number of situations" a suspended corporation's reinstatement served to validate "otherwise invalid prior action." (*Peacock Hill*, *supra*, at p. 371.) The cited cases, none of which involved appellate court subject matter jurisdiction, are: *Traub Co. v. Coffee Break Service, Inc.* (1967) 66 Cal.2d 368, *Diverco Constructors, Inc. v. Wilstein* (1970) 4 Cal.App.3d 6, *A. E. Cook Co. v. K S Racing Enterprises, Inc.* (1969) 274 Cal.App.2d 499, and *Duncan v. Sunset Agricultural Minerals* (1969) 273 Cal.App.2d 489. (*Peacock Hill*, *supra*, at p. 371.)

The decision in *Rooney*, *supra*, 10 Cal.3d 351, came a year after *Peacock Hill*, *supra*, 8 Cal.3d 369, which *Rooney*, without any analysis, cited with approval for the proposition that reinstatement of a suspended corporation "permitted it to proceed with the appeal." (*Rooney*, *supra*, at p. 359.)

3

Because the filing of a timely and valid notice of appeal is necessary to give the appellate court jurisdiction over the appeal, failure to file such a notice results in an irrevocable forfeiture of the litigant's right to appeal.  In my view, this forfeiture cannot be vacated or cured by later events, such as reinstatement of corporate powers by payment of delinquent taxes, and I would therefore overrule the two decisions of this court — *Peacock Hill*, *supra*, 8 Cal.3d 369 and *Rooney*, *supra*, 10 Cal.3d 351 — that held to the contrary.  But because those decisions may have been relied on by the bench and bar, I would, for reasons of fairness, apply the rule I propose to future cases only.  (See, e.g., *Smith v. Rae-Venter Law Group* (2002) 29 Cal.4th 345, 372; *Woods v. Young* (1991) 53 Cal.3d 315, 330.)  Solely on this basis, I agree with the majority's disposition here.


KENNARD, J.

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** Bourhis v. Lord

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX no opn. filed
**Rehearing Granted**

_____

**Opinion No.** S199887/S199889
**Date Filed:** March 4, 2013

_____

**Court:** Superior
**County:** Marin
**Judge:** James R. Ritchie

_____

**Counsel:**

Bourhis & Mann, Ray Bourhis, Lawrence Mann; Smith & McGinty, Daniel U. Smith and Valerie T. McGinty for Plaintiffs and Appellants.

Brydon Hugo & Parker, Edward R. Hugo, Heidi K. Hugo and Jeffrey Kaufman for Defendants and Respondents.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Edward R. Hugo
Brydon Hugo & Parker
135 Main Street, Suite 2000
San Francisco, CA 94105
(415) 808-0300