Filed 7/24/15  Marriage of Rubtsov and Rubtsova CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| In re the Marriage of ULYANA RUBTSOVA and IVAN V. RUBTSOV. _____ IVAN V. RUBTSOV,  Appellant,  v.  ULYANA RUBTSOVA,  Respondent. | B251506 (Los Angeles County Super. Ct. No. BD484894) |

APPEAL from a judgment of the Superior Court of Los Angeles County,

James D. Endman and Louis M. Meisinger, Judges.  Affirmed.

Ivan Rubtsov, in pro. per., for Appellant.

Ulyana Rubtsova, in pro. per., for Respondent.

*INTRODUCTION*

This is an appeal from custody and visitation orders in a high conflict marital dissolution proceeding. Appellant Ivan Rubtsov represented himself in most of the proceedings below, and both Ivan[1] and respondent Ulyana Rubtsova represent themselves on appeal.

Ivan and Ulyana have three minor children. After a lengthy contested custody proceeding, the trial court awarded sole physical and legal custody of the couple's two younger children to Ulyana and sole physical and legal custody of the oldest child, V., to Ivan. The court also required professional monitors to oversee visitation between both Ivan and V., respectively, and the younger children. The court made a number of important factual findings that informed its decision. Primarily, the court found that, following Ulyana's initiation of the marital dissolution action, Ivan engaged in an aggressive and persistent campaign to alienate Ulyana from the children. Ivan had imprinted his message on V. to the point that she became an instrument in his campaign against Ulyana. The court also found that Ulyana and Ivan are unable to communicate in a non-hostile, effective manner and therefore would be unable to make decisions together, as a joint custody arrangement would require.

Under the circumstances, we find no abuse of discretion in the court's custody and visitation orders. Accordingly, we affirm.

*FACTUAL AND PROCEDURAL BACKGROUND*

Ulyana commenced this marital dissolution and child custody proceeding in May 2008. Ulyana's and Ivan's three children are V. (now age 16), Va. (now age 13), and I. (now age 8). The parties were unable to come to an agreement on custody and visitation, and so a contested custody proceeding followed.

The high degree of conflict between Ivan and Ulyana was evident at the first hearing in this matter, which took place on July 11, 2008. For the purported benefit of

---

[1] We refer to the parties by their first names in the interest of clarity. We intend no disrespect.

the court, Ivan played a short video, apparently capturing a bitterly hostile exchange between Ivan and Ulyana that had taken place in front of the three children a few days earlier. After watching part of the video, the court admonished the parties that their venal behavior toward each other in front of the children was extremely upsetting to them. The court appointed minors' counsel and -- in light of its concern for the well-being of the children -- indicated it would consider referring the case to the Department of Children and Family Services. Eventually, Ivan and Ulyana stipulated they both would move out of the family's apartment and the children would stay there, to be cared for by Ivan's mother and a family friend. The court held a further custody hearing on July 23, 2008, and left the residence and visitation conditions in place. The court set a further custody hearing to take place on August 5, 2008.

Ulyana visited the children on July 25, 2008. Ivan's mother and his brother, Nick, were also at the apartment. At some point during the visit, Ulyana argued with V. and Va. about the volume of the music she was playing. As the argument escalated, the girls tried to push past Ulyana to change the volume and Ulyana moved to block them. V. reported that Ulyana hit her in the face. Both girls reported that Ulyana squeezed Va.'s head between her legs and tried to choke her. Nick said he could hear the argument from the kitchen. He then heard a "thud" and came into the room to find V. on the floor, yelling in Russian, "She hit me! She hit me!" Nick called the police. After the girls reported to the officers that Ulyana had beaten them, the officers arrested Ulyana on suspicion of child endangerment.

On August 4, 2008, Ivan advised the court of Ulyana's arrest. At the scheduled custody hearing on August 5, the court gave Ivan primary custody of the children and allowed him to move back into the family's apartment. The court issued a temporary restraining order against Ulyana prohibiting contact with the children, with the exception of telephone calls and supervised visits two to three days a week. The court also ordered a custody evaluation.

Unfortunately, the situation did not normalize. Shortly after Ivan moved back into the family's apartment, his ex-wife Ana Sert became the children's primary

caretaker. Initially, Ivan attempted to obstruct Ulyana's court-ordered visitation with the children. Later, after the court intervened, Ivan allowed visitation to proceed but was so hostile to the monitors that the parties had difficulty finding anyone who would monitor her visits with the children. After one visitation session, Ivan called the police and accused Ulyana of "frisking, pushing, squeezing" the children during monitored visitation. Officers interviewed the children. DCFS also received referrals against Ulyana in September and November of 2008 and March, July, and August of 2009.

On August 18, 2009, the court advised the parties that it had received the written report from the court-appointed custody evaluator, Dr. Devilliers. The report reflects that Dr. Devilliers interviewed V. and Va., along with many adults who interacted with them on a regular basis. These included family members, school teachers, and visitation monitors, as well as the children's pediatrician and therapists. She also visited Ivan's residence at which time she observed the children at home and spoke directly with them, as well as Ivan, Ivan's mother, and Ana Sert. In addition, Dr. Devilliers interviewed Ulyana and several mental health professionals.

Based on the information gathered during her investigation, Dr. Devilliers recommended that physical custody of Va. and I. be immediately transferred from Ivan to Ulyana. Dr. Devilliers observed that V. and Va. had increased levels of anxiety regarding their interactions with Ulyana, due primarily to Ivan's tendency to speak pejoratively about Ulyana and to discuss volatile aspects of the divorce. During visitation sessions with their mother, both girls behaved aggressively and every visit resulted in some sort of conflict, rejection, or confrontation. In addition, Dr. Devilliers was troubled by the fact that both girls continued to allege that Ulyana was abusing them during their visitation sessions -- allegations that were contradicted by the professional monitors in attendance. Dr. Devilliers discounted the allegations of prior abuse made by Ivan, V., and Va., including the allegations about the July 25, 2008 incident that led to Ulyana's arrest, because she found their accounts to be inconsistent and not credible. Finally, Dr. Devilliers described Ivan as intimidating, controlling, and

4

manipulative to the point of being abusive, and recommended that he be required to participate in a 52-week batterer's program.

The court also heard testimony from Ian Rosen, a DCFS emergency response social worker. He said DCFS had received four referrals (so far) against Ulyana. DCFS found one referral—the one relating to the July 25, 2008 incident—was substantiated. In the other three cases DCFS investigated, however, it determined the referrals were unsupported. Rosen personally investigated two of the referrals, and believed that Ivan planned to alienate Ulyana and substitute Ana in the role of the children's mother. Further, Rosen said he recommended to his supervisor that DCFS open a case against Ivan due to his emotional abuse of the children.

After hearing argument from counsel and Ivan in pro per, the court followed the recommendation of Dr. Devilliers and removed Va. and I. from Ivan's custody, awarding temporary physical custody of the two children to Ulyana. The court ordered weekly, monitored visitation between Ulyana and V., and between Ivan and the two minor children. The court also ordered individual therapy for each of the minor children, as well as conjoint therapy for Ulyana and V. Finally, the court set the matter for a formal trial on the bifurcated issues of custody and visitation.

Trial began on October 30, 2009 and continued sporadically over the next year.[2] The court heard testimony from Ivan and Ulyana,[3] as well as the children's therapists and several social workers.

Dr. Freya Kaye, the individual therapist for V. and Va., testified very briefly. She began treating V. in October 2008 and had recently seen significant improvement in her. She characterized V. as cooperative, whereas she previously had been rebellious

---

[2]    Much of the delay was due to Ivan's claims of poor health.

[3]    In the interest of expediting the proceedings, the court invited both parties to offer their prior declarations into evidence in lieu of live testimony on the issues addressed in the declarations. Ulyana offered, and the court received, five declarations. Ivan did not include Ulyana's declarations in his designation of the record on appeal, nor did he provide them in response to the court's request for trial exhibits.

5

and rude.  She also confirmed that, when she began treating V. and Va., both girls expressed anxiety about being with Ulyana.

Dr. Alfredo Crespo, the conjoint therapist for Ulyana and the girls, testified he saw a dramatic and positive shift in Va. following the custody change.  However, he offered a poor prognosis for improvement in V.'s relationship with Ulyana.  He also described Ivan as rigid in his view that Ulyana is "abusive," a "criminal," and "a bad mother."

DCFS social worker Ian Rosen testified again and by that time had investigated three DCFS referrals against Ulyana made during 2009, all of which he found to be unsubstantiated.  Rosen considered all three children to be "in danger" while in Ivan's custody.  Rosen also considered Ivan to be a flight risk and feared he might leave the state with the children without the court's permission.

A second DCFS emergency response social worker, Anne Thomas, also testified.  Thomas visited the children at Ulyana's home approximately five times and found Ulyana to be cooperative.  She observed that the children seemed happy and well cared for, and saw no signs of abuse.

The court also heard the testimony of Cynthia Ito, an in-house therapist at the San Fernando Community Mental Health Center.  Ito's primary focus is on parent education and helping to build strong relationships between parents and their children.  She visited Ulyana's home about once every two weeks, and she observed that the children seemed safe and happy.

In addition, the court heard testimony and received evidence about the July 25, 2008 incident.  In particular, the court noted Dr. Devilliers interviewed V. and Va. and concluded that neither of their accounts of the incident was credible.  The court found, as an independent trier of fact, "that the children were not subjected to physical abuse by their mother in July of 2008, and that the incident in question was contrived, misrepresented and blown out of proportion."  More particularly, the court found "the children (goaded by [Ivan]) were as responsible for that incident, or more so, than their mother."  Further, the court expressed its belief that Ulyana "pled nolo contendere in

6

that case more out of parental concern for involving the children in a criminal proceeding than out of any admission on her part that she was guilty."

The court issued its statement of decision on April 1, 2011 and entered the judgment on the bifurcated issues of custody and visitation on October 7, 2011.[4] The court awarded sole legal and physical custody of the two younger children to Ulyana, and awarded sole legal and physical custody of V. to Ivan. The court ordered regular, professionally monitored visitation between V. and Ulyana. The court also ordered professionally monitored visitation between Ivan and the younger children for two hours a week. In addition, the court ordered individual therapy for Va. and V. as well as conjoint therapy between the siblings, as Dr. Kaye recommended. The court also ordered conjoint therapy for Ulyana and V., again as recommended by Dr. Kaye. Finally, the court ordered that V.'s visits with the younger siblings would be professionally monitored.

At the conclusion of the case, the court entered a final judgment incorporating these custody and visitation provisions. On July 9, 2013, the court clerk entered and served a copy of the final judgment. Ivan filed his notice of appeal more than 60 days later, on September 18, 2013.

### APPEALABILITY

We first consider whether we have jurisdiction to consider Ivan's appeal. A notice of appeal must be filed within 60 days after service of the notice of entry of judgment. (Cal. Rules of Court, rule 8.104(a).) Ivan concedes his notice of appeal from the final judgment is untimely and asks us to excuse his late filing. We have no authority to grant his request because " '[t]he time to file notice of appeal, both in civil and criminal cases, has always been held jurisdictional in California.' [Citation.]" (*Bourhis v. Lord* (2013) 56 Cal.4th 320, 324-325 (*Bourhis*); *Conservatorship of*

---

[4] As we note in the discussion regarding appealability, Ivan attempted to appeal from the October 7, 2011 judgment. We dismissed the appeal because the judgment on the bifurcated issues of custody and visitation is not a final judgment within the meaning of Code of Civil Procedure, section 904.1, subdivision (a)(1)-(13).

*Townsend* (2014) 231 Cal.App.4th 691, 701 (*Townsend*).) When a notice of appeal "has not in fact been filed within the relevant jurisdictional period—and when applicable rules of construction and interpretation fail to require that it be deemed in law to have been so filed—the appellate court, absent statutory authorization to extend the jurisdictional period, lacks all power to consider the appeal on its merits and must dismiss, on its own motion if necessary, without regard to considerations of estoppel or excuse." (*Hollister Convalescent Hosp., Inc. v. Rico* (1975) 15 Cal.3d 660, 674; *Bourhis, supra,* 56 Cal.4th at p. 330; *Townsend, supra,* 231 Cal.App.4th at p. 701.)

Alternatively, Ivan asks us to save his appeal by construing an earlier-filed notice of appeal as a premature appeal from the final judgment. Under California Rules of Court, rule 8.104(d)(2), we have discretion to construe a notice of appeal as a premature appeal where the notice of appeal is filed after the court has announced its intended ruling but before it has rendered its final judgment. We therefore consider whether either of Ivan's earlier notices of appeal satisfies these conditions.

Ivan directs our attention to the notice of appeal filed on February 1, 2012. But that notice of appeal is expressly limited to four orders the trial court entered on January 9, 2012. In those orders, the trial court denied Ivan's request to hold the two court-appointed minors' counsel in contempt and required him to pay the attorney fees minors' counsel incurred in responding to his contempt motion. We affirmed the orders in an unpublished decision. (*Rubtsova v. Rubtsov* (B238855, dated 9/26/13).) Because the February 1, 2012 notice of appeal is expressly limited to the orders of January 9, 2012, we cannot reasonably construe that notice of appeal as a premature appeal from the final judgment.

However, Ivan also filed a notice of appeal on March 9, 2012, in which he appealed from the trial court's October 7, 2011 judgment on the bifurcated issues of custody and visitation. We dismissed that appeal because a judgment on bifurcated issues is not a final judgment within the meaning of Code of Civil Procedure section 904.1, subdivision (a)(1)-(13).

8

In the present appeal, Ivan challenges portions of the custody and visitation orders included in the October 7, 2011 judgment on bifurcated issues that the trial court subsequently incorporated into the final judgment of July 9, 2013. Accordingly, Ivan filed the March 9, 2012 notice of appeal after the court announced its custody and visitation rulings, but before it rendered the final judgment. We exercise our discretion to treat the March 9, 2012 notice of appeal as a premature appeal from the final judgment and deem it timely filed. (Cal. Rules of Court, rule 8.104, subd. (d)(2); *Turpin v. Sortini* (1982) 31 Cal.3d 220, 224, fn. 2.) We lack jurisdiction to consider any issue not embraced by the October 7, 2011 judgment and therefore do not consider Ivan's challenges to the court's final orders regarding spousal support, child support, and date of separation.

### *CONTENTIONS*

Ivan contends the trial court erred in awarding sole physical and legal custody of the two younger children to Ulyana. Ivan argues that (1) the trial court could not award custody (sole or joint) to Ulyana because her no-contest plea to battery charges involving the girls triggered a rebuttable presumption that placing any of the children in her custody would be against the best interest of the children and Ulyana failed to rebut the presumption; (2) the trial court could not award sole custody of the younger children to Ulyana without first finding, by clear and convincing evidence, that Ivan is "unfit;" and (3) the trial court abused its discretion by issuing a custody order that separates the three siblings.

Ivan also contends the trial court abused its discretion by requiring professional monitors to supervise his visitation, as well as V.'s visitation, with the two younger children.

Finally, Ivan contends that Family Code sections 3150 to 3153, which provide for the appointment of minors' counsel in custody proceedings, are unconstitutional.

### *STANDARD OF REVIEW*

We review custody and visitation orders for abuse of discretion. (*In re Marriage of Burgess* (1996) 13 Cal.4th 25, 32 (*Burgess*).) Under this standard of review, an

appellate court must uphold the trial court's ruling if it is correct on any basis, regardless of whether or not that basis was invoked in the trial court. (*Montenegro v. Diaz* (2001) 26 Cal.4th 249, 255 (*Montenegro*).) In evaluating the factual basis for an exercise of discretion, we give broad deference to the trial judge. (*Rich v. Thatcher* (2011) 200 Cal.App.4th 1176, 1181 (*Rich*).) The reviewing court should interfere only if it finds that under all the evidence, viewed most favorably in support of the trial court's action, no judge could reasonably have made the order he or she did. (*Ibid.*) " 'The burden is on the party complaining to establish an abuse of discretion, and unless a clear case of abuse is shown and unless there has been a miscarriage of justice a reviewing court will not substitute its opinion and thereby divest the trial court of its discretionary power.' [Citations.]" (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 566; *Rich, supra,* 200 Cal.App.4th at p. 1181.) An appellant's failure to provide an adequate record on an issue requires that the issue be resolved against the appellant. (*Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1295.)

## DISCUSSION

1. *Ulyana Overcame the Section 3044 Rebuttable Presumption Against An Award of Child Custody to Her that Arose Due to Her Conviction on Battery Charges*

As noted, Ulyana pled "no contest" to charges of simple battery arising out of the July 25, 2008 confrontation between her and her two daughters. Ivan correctly asserts Ulyana's conviction triggered a rebuttable presumption that placing the children in her custody is not in their best interest under Family Code, section 3044, subdivision (a).[5] He argues no substantial evidence supports the trial court's finding that Ulyana overcame the presumption and therefore the court erred by making an award of child custody to Ulyana.

Section 3044, subdivision (a), provides that, "[u]pon a finding by the court that a party seeking custody of a child has perpetrated domestic violence against . . . the child or the child's siblings within the previous five years, there is a rebuttable

---

[5]     All further code references are to the Family Code unless otherwise specified.

presumption that an award of sole or joint physical or legal custody of a child to a person who has perpetrated domestic violence is detrimental to the best interest of the child, pursuant to Section 3011. This presumption may only be rebutted by a preponderance of the evidence." (Fam. Code, § 3044, subd. (a).) Subdivision (b) lists factors a court must consider to determine whether the presumption has been rebutted, including whether the perpetrator has completed required treatment programs or parenting programs, complied with the terms of a restraining order, and committed any further acts of domestic violence. (Fam. Code, § 3044, subd. (b)(1)-(7).) "[W]here the section 3044 presumption has been rebutted, there is no statutory bar against an award of joint or sole custody to a parent who was the subject of the order." (*Keith R. v. Superior Court* (2009) 174 Cal.App.4th 1047, 1055.)

Ivan first argues that the trial court failed to consider the factors set forth in section 3044. However, in its statement of decision, the court specifically referred to section 3044 and confirmed that the presumption against an award of child custody to Ulyana arose as a result of the battery conviction. The court then observed that Ulyana completed a parenting class, obtained individual therapeutic treatment from a psychiatrist and a social worker, and not only received but welcomed services from the social worker assigned to her case--all relevant factors set forth in section 3044, subdivision (b).

Ivan also asserts that Ulyana failed to rebut the section 3044 presumption. At the custody trial, the court received into evidence five declarations submitted by Ulyana. The trial court's comments at the trial suggest Ulyana's declarations provide evidence she complied with the criminal court's orders to complete parenting classes and to get mental health treatment and support. Unfortunately, we cannot evaluate whether this evidence was sufficient to rebut the section 3044 presumption because Ivan failed to include these declarations in the appellate record. Without a complete record, we cannot undertake a meaningful review of Ivan's argument on appeal and must resolve the issue against him. (See *Foust v. San Jose Construction Co., Inc.* (2011) 198 Cal.App.4th 181, 187.)

11

2. *The Trial Court Applied the Correct Legal Standard in its Custody and Visitation Awards*

Ivan contends that even if the court found Ulyana rebutted the section 3044 presumption--and therefore was not prohibited from awarding custody to her--the court was required to make a joint custody award.

" 'Sole legal custody' means that one parent shall have the right and the responsibility to make the decisions relating to the health, education, and welfare of a child." (Fam. Code, § 3006.)  " 'Joint legal custody' means that both parents shall share the right and the responsibility to make" those decisions.  (Fam. Code, § 3003.) To be workable, joint legal custody requires the parents' willingness to cooperate in making medical, educational, and psychological decisions.  (See *In re Marriage of McLoren* (1988) 202 Cal.App.3d 108, 115-116 [in most circumstances, children's best interests are served by joint legal custody, but where there is acrimony "the reality of their parents' conflicts unavoidably hampers the realization of that goal"].)

In this case, the trial court awarded sole rather than joint legal and physical custody of the children because it concluded Ivan and Ulyana are unable to communicate effectively or make decisions together and therefore would be unable to implement a joint custody award.  Specifically, the court found that "the ability of these two parties to communicate is so compromised, if not to the point of total deterioration, that it is impossible for them to be expected to communicate with one another to decide issues involving their children's health, education and welfare . . . . "  The court cited one example in its statement of decision:  "[A]s recently as October 2, 2010, [Ivan's] telephone conversation with [Ulyana] resulted in another referral to DCFS against [Ulyana].  This latest referral to DCFS was based on the way [Ivan] misconstrued a telephone conversation with [Ulyana].  The Court finds that [Ivan] cannot even have a non-hostile telephone communication with [Ulyana]."

Ivan cites no evidence presented in the trial court to contradict the court's conclusion that the parties are unable to communicate effectively with each other and therefore would be unable to implement a joint custody award.  Instead, Ivan highlights

selected evidence (or, in some cases, allegations) that he believes counsels in favor of awarding him sole legal and physical custody of the younger children.  In so doing, Ivan violates the substantial evidence rule.  (See *Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881 [appellants challenging a decision for lack of substantial evidence "are required to set forth in their brief *all* the material evidence on the point and *not merely their own evidence*"].)  Ivan also invites us to reweigh the evidence and ignore the trial court's credibility determinations, which we decline to do.  (See *Kelly v. CB & I Constructors, Inc.* (2009) 179 Cal.App.4th 442, 452 [noting that, on substantial evidence review, appellate court will not "reassess the credibility of witnesses or reweigh the evidence"].)

Rather than address the court's specific findings in this case, Ivan devotes much of his opening brief to the general notion of parental rights.  As Ivan notes, the United States Supreme Court consistently has held that the interest of parents in the care, custody, and control of their children is a fundamental liberty interest protected by the Due Process Clause of the Fourteenth Amendment.  (See, e.g., *Troxel v. Granville* (2000) 530 U.S. 57, 65-66 [discussing Supreme Court precedent].)  Ivan then asserts that, because parental rights are constitutionally protected, a trial court may not make an award of sole legal and physical custody to one parent without first finding, by clear and convincing evidence, that the noncustodial parent is "unfit."  That is not the law in California.

First, the heightened "clear and convincing evidence" standard does not apply in this case.  Ivan directs us to section 3041, subdivision (b), which does refer to the "clear and convincing evidence" standard.  However, section 3041 applies only when a court awards custody of a child to a nonparent over the objection of the child's parent.  (Fam. Code, § 3041, subd. (a).)  Section 3041 is plainly inapplicable here.

Second, a trial court is not required to find that one parent is "unfit" before it makes a sole custody award to the other parent.  The standards applicable to custody awards in California have been frequently considered by both our courts and our Legislature.  Our Supreme Court has explained that, "[u]nder California's statutory

13

scheme governing child custody and visitation determinations, the overarching concern is the best interest of the child." (*Montenegro, supra,* 26 Cal.4th at p. 255.) To the extent Ivan's arguments assert the supremacy of his parental rights over the rights of his children as well as the state's interest in protecting them, we note our Legislature has propounded a detailed statutory scheme that balances these interests. To that end, the Family Code provides the trial court "may, during the pendency of a [marital dissolution] proceeding or at any time thereafter, make an order for the custody of a child during minority that seems necessary or proper." (Fam. Code, § 3022.) Recognizing that every child and each situation is different, the Legislature has vested the courts and families with "the widest discretion to choose a parenting plan that is in the best interest of the child." (Fam. Code, § 3040, subd. (c).) "When determining the best interest of the child, relevant factors include the health, safety and welfare of the child, any history of abuse by one parent against the child or the other parent, and the nature and amount of contact with the parents." (*Montenegro, supra,* 26 Cal.4th at p. 255, citing Fam. Code, § 3011.)

Further, and to Ivan's point, while a court may consider a range of factors in order to decide what is in a child's best interest, no California court has held that a court must find that one parent is "unfit" as a prerequisite to an award of sole legal and physical custody to the other parent. To the contrary, the Family Code does not even establish a preference or presumption in favor of joint custody. Section 3040, subdivision (b), provides: "This section establishes neither a preference nor a presumption for or against joint legal custody, joint physical custody, or sole custody, but allows the court and the family the widest discretion to choose a parenting plan that is in the best interest of the child." (Fam. Code, § 3040, subd. (c); see *Burgess, supra*, 13 Cal.4th at p. 34.) "Similarly, although Family Code section 3020 refers to 'frequent and continuous contact,' it does not purport to define the phrase 'frequent and continuous' or to specify a preference for any particular form of 'contact.' Nor does it include any specific means of effecting the policy, apart from 'encourag[ing] parents to

14

share the rights and responsibilities of child rearing.' " (*Burgess, supra,* 13 Cal.4th at pp. 34-35.)

The trial court properly applied these well-established principles in its decision and did not abuse its discretion by awarding sole, rather than joint, custody of the children.

4. *The Court Did Not Abuse Its Discretion by Making a Custody Award That Separates the Children*

Ivan also contends the trial court abused its discretion by issuing a custody order that separates V. from her two younger siblings. As Ivan observes, a custody award that separates siblings is disfavored. "Children are not community property to be divided equally for the benefit of their parents. The parents of these children have chosen to divorce each other. The children have not chosen to divorce each other. At a minimum, the children have a right to the society and companionship of their siblings." (*In re Marriage of Williams* (2001) 88 Cal.App.4th 808, 814 (*Williams*).) However, although maintaining sibling bonds is a significant factor in a custody decision, it "is not a dispositive one." (*In re Marriage of Steiner & Hosseini* (2004) 117 Cal.App.4th 519, 529 (*Steiner & Hosseini*); see also *Williams, supra*, at p. 814 ["We can envision a case in which an extraordinary emotional, medical or educational need, or some other compelling circumstance, would allow the separation of siblings"].)

*Steiner & Hosseini* involved circumstances strikingly similar to the case before us. There, the trial court presided over a lengthy and acrimonious divorce proceeding in which the parents fought bitterly over everything, including the children. Ultimately, the court awarded sole physical and legal custody of one child to the father (Steiner) and sole physical and legal custody of the other child to the mother (Hosseini). The court separated the children because it "found substantial evidence that Hosseini had 'poisoned' the relationship between Steiner and his elder son, and that custody of the younger son was perhaps the only way to prevent that kind of alienation from occurring with the younger son." (*Steiner & Hosseini, supra,* 117 Cal.App.4th at p. 529.) The Court of Appeal affirmed, noting that in making a custody award, a trial judge properly

takes "into consideration which parent, as primary custodian, will best facilitate a good relationship with the other parent. [Citations.]" (*Ibid.*)

Here, as in *Steiner & Hosseini*, the trial court separated the children because it found that Ivan "poisoned the relationship between [Ulyana] and the parties' eldest daughter, [V.], to the point that she became a participant in [Ivan's] alienation campaign against [Ulyana]. Awarding [Ulyana] custody of the two younger children, while ordering that [Ivan] and the siblings have monitored visitations was, under the current circumstances, the only way to prevent further alienation of the younger siblings from their mother." Further, the court found the younger children "have little chance of being independently able to maintain a relationship with their mother in the face of resistance on the part of [V.] and [Ivan's] intractable and unabated belief that [Ulyana] must be effectively removed from her children's lives." Substantial evidence supports these findings.

The trial court here also considered which parent, as primary custodian, would better facilitate a relationship between the children and the other parent. (See Fam. Code, § 3020, subd. (b) ["It is the public policy of this state to assure that children have frequent and continuing contact with both parents"]; and see *In re Marriage of Moschetta* (1994) 25 Cal.App.4th 1218, 1234 ["It is common knowledge among family law practitioners that the quickest way for a parent to lose primary physical custody is for that parent to obstruct the visitation rights of the other parent"].) The court found that Ulyana "encourages a relationship between the children and their father" and "consistently made the children available for [Ivan's] weekly, court-ordered monitored visitations." By contrast, the court found that Ivan "has not supported a meaningful, healthy relationship between [Ulyana] and the children," and that "as recently as the last day of trial, [Ivan] remains critical of [Ulyana] and believes that she should only be seeing the children in a monitored setting." Substantial evidence also supports these findings.

We find no abuse of discretion in the trial court's decision to separate the siblings.

16

5.      *The Court Did Not Abuse Its Discretion By Requiring*
        *Monitored Visitation*

Ivan also contends the trial court abused its discretion by requiring professional monitors to be present at his, as well as V.'s, visits with the two younger children.

Trial courts generally have broad discretion in defining a parent's reasonable visitation rights and establishing a visitation schedule that serves the child's best interest. (Fam. Code, § 3100(a); see Hogoboom & King, Cal. Practice Guide: Family Law (The Rutter Group 2015) ¶ 7:485, pp. 7-186 to 7-187.) For the reasons already explained, the best interest of a child is served by an arrangement that prevents parental alienation. (See *Steiner & Hosseini, supra*, 117 Cal.App.4th at p. 529.)

Here, the trial court found that "monitored visitation was, under the current circumstances, the only way to prevent further alienation of the younger siblings from their mother." More particularly, the trial court found that Ivan, and by extension V., persistently attempted to alienate the younger children from their mother. With respect to Ivan, the court found that: (1) Ivan "has engaged in an insidious campaign over time to alienate the children from their mother whom he characterized as a bad mother"; (2) Ivan "has shown a history of conflict in this case . . . . Virtually every person involved in this case has, in some fashion or another, come under abusive attack by [Ivan]"; (3) in the opinion of the custody evaluator, "[Ivan] was manipulative, intimidating, isolating and controlling . . . and . . . has engaged in activities designed to alienate the children from their mother"; and (4) Ivan seeks to eliminate Ulyana from the children's lives. Substantial evidence supports these findings.

With respect to V., the court found that: (1) V. behaves in an uncharacteristically rude and disruptive manner during her interactions with Ulyana; (2) "[V.] has been co-opted by [Ivan] to the point that she has an unwavering animus toward her mother, and it continues, even though, in most recent times, Dr. Kaye [V.'s therapist] noted an improvement in the relationship with [Ulyana] and [V.];" (3) V. speaks badly about her mother and says that she does not like her mother; (4) one DCFS social worker believes V. is being emotionally abused by Ivan; and (5) the younger children "have little

chance of being independently able to maintain a relationship with their mother in the face of resistance on the part of [V.] and [Ivan]'s intractable and unabated belief that [Ulyana] must be effectively removed from her children's lives." Substantial evidence also supports these findings.

We find no abuse of discretion in the court's visitation monitoring requirement.

6.      *The Minors' Counsel Provisions of the Family Code*
        *Are Not Unconstitutional*

Sections 3150 through 3153 govern the appointment of independent counsel for minors in a custody or visitation proceeding. Specifically, section 3150 provides: "If the court determines that it would be in the best interest of the minor child, the court may appoint private counsel to represent the interests of the child in a custody or visitation proceeding, provided that the court and counsel comply with the requirements set forth in Rules 5.240, 5.241, and 5.242 of the California Rules of Court." (Fam. Code, § 3150, subd. (a).) Section 3151, subdivision (a), explains the role of minors' counsel is "to gather evidence that bears on the best interests of the child, and present that admissible evidence to the court in any manner appropriate for the counsel of a party." (Fam. Code, § 3151, subd. (a).) Subdivision (b) gives minors' counsel, among other things, the right to take any action that is available to a party to the action, including filing pleadings, presenting evidence, and generally participating in ongoing litigation. (Fam. Code, § 3151, subds. (b),(c).) In addition, minors' counsel has the right to refuse physical or psychological examinations not ordered by the court, and to assert or waive litigation privileges. (Fam. Code, § 3151, subd. (c)(6),(7).) Here, the trial court appointed minors' counsel for the children at the first hearing.

Ivan seems to believe the appointment of minors' counsel is unconstitutional, both as a general matter and in his case in particular. Central to his argument is his representation of the authority exercised by minors' counsel, which he describes as "mak[ing] major decisions in the children's life, i.e., whether to bring children to court ordered visitation," and "making decisions to deny Ivan even monitored visitations, demand[ing] and receiv[ing] the order to have two monitors for each visitation,

18

and . . . advocating in the court for continuous deprivation of custody to the parent." Ivan also asserts that minors' counsel have "all kind [sic] of privileges and immunities from been [sic] accountable for their deeds." Ivan then argues that this vast scope of authority "pretty much deprives parents of children's legal custody or at least infringes parents['] fundamental right to child's legal custody."

We reject Ivan's argument because his description of the roles and responsibilities of minors' counsel generally and in this case is grossly inaccurate. The Family Code does not vest minors' counsel with authority to deprive parents of their fundamental rights vis-a-vis their children. Moreover, there is no evidence that in this case the trial court allowed minors' counsel to exercise any authority beyond that the Family Code provides.

## *DISPOSITION*

The judgment is affirmed.  Respondent is awarded costs on appeal.

## *NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS*

EGERTON, J.[*]

WE CONCUR:

EDMON, P. J.

ALDRICH, J.

---

[*]    Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.