[No. G030604. Fourth Dist., Div. Three. Apr. 5, 2004.]

In re Marriage of WILLIAM H. STEINER and TAHEREH HOSSEINI.

WILLIAM H. STEINER, Respondent, v.
TAHEREH HOSSEINI, Appellant.

## Counsel

Wasserman & Mejia and Henry J. Mejia for Appellant.

William H. Steiner, in pro. per., for Respondent.

## Opinion

## SILLS, P. J.—

### I. Introduction

In this appeal we conclude that the failure on the part of two divorcing spouses to exchange final declarations of disclosure (Fam. Code, § 2105) does not constitute a "get-a-new-trial-free" card, giving either one of them the automatic right to a new trial or reversal on appeal when there is no showing of a miscarriage of justice. (Cal. Const., art. VI, § 13.) We also deal with several miscellaneous challenges to the judgment, which we affirm.

## II. Facts

Tahereh Hosseini and William Steiner married in December 1986 and separated in March 1993. During their marriage, Hosseini and Steiner[1] had two children, John, now 14, and Shah, now 12. A judgment for dissolution of marriage was entered in April 1995, and the court reserved all other issues for trial. The trial took place in November 2000 and lasted approximately eight days.

At the trial neither party complained about the absence of any declarations of disclosure. The only reference to the subject in the record, and that was an extremely oblique one, was made by Steiner's trial counsel. In the context of a discussion about whether a certain deposit of $16,000 was Hosseini's separate property, Steiner's lawyer made reference to certain form interrogatory responses received from Hosseini; he complained that she had not acknowledged receiving the $16,000 in those interrogatory responses. As an afterthought, he then made a brief comment that there was no declaration of disclosure to that effect either.[2]

After the trial, Judge Mandel ordered Steiner's counsel to prepare the proposed judgment. Then a long time passed—more than a year—before Steiner's counsel submitted the judgment. That was long enough for Judge Mandel to retire in the interim and be replaced by several judges, ending with Judge Daniel T. Brice.

Finally, on February 26, 2002, the judgment was submitted. Judge Brice approved it two days later on February 28, 2002. That didn't give Hosseini enough time to file any objections to it (see Cal. Rules of Court, rule 232(e)), but she did so anyway on March 8, 2002.

---

[1] Since the parties have different last names there is no reason to use the familiar first names. However, the tendency of litigants and trial court judges to use litigation designations in family law cases (e.g., "Appellant and Respondent," "Petitioner and Respondent") is an unnecessary imposition on any reader who doesn't already know which spouse assumed what role in the litigation.

[2] Here is the relevant portion of transcript:

"Mr. Klein [Steiner's counsel]: There is no statement by Ms. Hosseini in those responses to interrogatories that acknowledges receiving the $16,000 that Ms. Hosseini indicates that she did receive during that period of time. [¶] There is also a requirement for a declaration of disclosure which talks about what funds may be available, how they may be utitilized. There has never been anything disclosed back at the time that this case was fresh in everybody's mind closer to the date of the event, the event that's in question." Steiner's counsel then continued with his theme on the lack of evidence that the $16,000 was not separate property, leaving the declaration of disclosure reference behind: "There was never any revelation nor comment nor notation nor evidence nor payments, nothing, showing that $16,000 was received from Zahra Hosseini [sister of Tara Hosseini]."

Hosseini was served with a copy of the signed judgment on March 15, 2002, and on March 27, 2002, she filed the notice of intention to move for a new trial, but without a supporting memorandum of points and authorities. It was not until more than three weeks later, on April 19, 2002, that she filed a supporting memorandum. The memorandum *did* mention the failure to serve final declarations of disclosure on the part of both parties, but did *not* specify any way in which Hosseini had been prejudiced by that failure. Hosseini filed timely appeals from both the entry of judgment and the order denying the new trial.

## III. DISCUSSION

### A. *The Proposed Judgment*

We will tackle an easy issue first. There is no question that Judge Brice slipped up in signing the proposed judgment two days after he got it. (See Cal. Rules of Court, rule 232(e) ["Any party affected by the judgment may, within 10 days after service of the proposed judgment, serve and file objections thereto. The court *shall*, within 10 days *after* expiration of the time for filing objections to the proposed judgment . . . sign and file its judgment." (Italics added.)].) The question is whether that mistake was prejudicial.

No. "While a Rule of Court phrased in mandatory language is generally . . . binding on the courts . . . departure from it is not reversible error unless prejudice is shown." (*Estate of Cooper* (1970) 11 Cal.App.3d 1114, 1121 [90 Cal.Rptr. 283] [no reversible error where appellant was precluded from filing objections to the proposed judgment because the court did not follow requirements of rule 232]; see also *Baker v. Eilers Music Co.* (1917) 175 Cal. 652, 656–657 [166 P. 1006] [error disregarded where court prematurely signed and filed findings].)

Hosseini has not identified any substantial right which she lost as a result of the trial's court premature signing of the judgment before reading her objections. In fact, an examination of her objections shows that they would have been of no aid to the trial judge if he had waited. Those objections were a cross-referenced tangle of connections between the judgment and portions of a reporter's transcript not otherwise quoted or identified. Indeed, as presented to the reader, they are incomprehensible. Here are illustrative excerpts:

"Paragraphs 'C' and 'E' are in Contradiction with the actual minute order with respect to the Court Reporter's Transcript of November 9, 2000 proceedings and the Court's Minute Order on November 15, 2000. [¶] . . . Paragraph '6' is in contradiction with the Court's 'Minute Order' and the Court

Reporter's transcripts on November 9, 2000 proceedings. [¶] . . . Paragraph '1' is in contradiction with the court's Minute Order. [¶] . . . Paragraphs '7' and '8' are in contradiction with the Court's Minute Order and the Court Reporter's Transcripts of the trial proceedings. [¶] . . . Paragraph 'B' contradicts the Court Minute Order and the Court Reporter's Transcripts of the trail [*sic*] proceedings on November of 2000. Moreover, the proposed Judgment of Community Property is incomplete and dose [*sic*] not cover all the Minute Orders and the findings of the Court during the trial."

■ Insufficient objections raise an inference that the findings in question support the judgment. (See Code Civ. Proc., § 634 [where "omission or ambiguity was brought to the attention of the trial court . . . it shall not be inferred on appeal . . . that the trial court decided in favor of the prevailing party as to those facts or on that issue"]; *In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133–1134 [275 Cal.Rptr. 797, 800 P.2d 1227] ["The clear implication of [section 634] is that if a party does not bring . . . deficiencies to the trial court's attention . . . the appellate court will imply findings to support the judgment."]; *Ripani v. Liberty Loan Corp.* (1979) 95 Cal.App.3d 603, 615 [157 Cal.Rptr. 272] [objections merely stating that the findings are "not adequate" and "ambiguous" not sufficient].) In this case, Hosseini's opaque assertions of unarticulated inconsistencies with unquoted portions of reporter's transcripts could not have helped Judge Brice in any event. We therefore conclude the error here was harmless.

## B. *The Absent Declarations of Disclosure*

Now to the harder issue. We may infer from both the motion for new trial and the appellant's opening brief that the parties did exchange preliminary declarations of disclosure as required by section 2104 of the Family Code. That is, Hosseini makes no complaint that the failure to receive a preliminary declaration hampered her discovery or preparation for the case. It is also a reasonable inference from the record that neither party cared about receiving a final declaration; as we mentioned, the only time the issue was brought up at trial before Judge Mandel was in the context of a complaint by *Steiner's* counsel regarding a question of characterization of property that Hosseini was claiming to be her separate property. Moreover, there is no dispute before us now that *both* parties are at fault, not just Steiner.

So the question before us is pristine—whether the failure to exchange final declarations of disclosure is enough, *by itself*, to *compel* the granting of a new trial or the reversal of a judgment on appeal?[3]

---

[3] Here, technically, the issue wasn't even raised until the new trial motion, so one might say that the issue was waived as to any attack on the judgment as such; then again, one might as

Prior to the 2001 amendments to the Family Code disclosure statutes (see Stats. 2001, ch. 703), the question would have been easily answered: No. At least two Court of Appeal opinions, *In re Marriage of Jones* (1998) 60 Cal.App.4th 685 [70 Cal.Rptr.2d 542] and *In re Marriage of McLaughlin* (2000) 82 Cal.App.4th 327 [98 Cal.Rptr.2d 136], had squarely held that a party must show some prejudice as a result of the nondisclosure. (See *Jones, supra,* 60 Cal.App.4th at pp. 694–695; *McLaughlin, supra,* 82 Cal.App.4th at pp. 336–337.) Of course, if a trial court in its discretion vacated a judgment because of the absence of disclosures, the decision would readily be upheld on appeal as well. (See *In re Marriage of Fell* (1997) 55 Cal.App.4th 1058, 1066 [64 Cal.Rptr.2d 522]; *In re Marriage of Brewer & Federici* (2001) 93 Cal.App.4th 1334, 1342–1346 [113 Cal.Rptr.2d 849].)

However, the 2001 amendments added this sentence to subdivision (d) of section 2107: "The failure to comply with the disclosure requirements does not constitute harmless error." It appears that the sentence was added precisely to undo the rule articulated by *Jones* and *McLaughlin*. (See Hogoboom & King, Cal. Practice Guide: Family Law (The Rutter Group (2003) ¶ 16:124.4, p. 16-34 ["This changes pre-2002 law under which the court had discretion to decide, on a case-by-case basis, whether the parties' waiver of the final declarations of disclosure exchange would affect their set-aside rights. It also supersedes pre-2002 case law affirming judgments under a 'harmless error' standard despite a violation of the disclosure statutes."].)

*Jones* and *McLaughlin* were not, however, cases based purely on statutory construction. Each case relied on the constitutional mandate embodied in article VI, section 13 of our state Constitution that no judgment may be set aside or new trial granted unless there has been a miscarriage of justice. (*Jones, supra,* 60 Cal.App.4th at p. 694; *McLaughlin, supra,* 82 Cal.App.4th at p. 336.)

Article VI, section 13 reads, in its entirety, as follows: "No judgment shall be set aside, or new trial granted, in any cause, on the ground of misdirection of the jury, or of the improper admission or rejection of evidence, or for any error as to any matter of pleading, or *for any error as to any matter of procedure,* unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice." (Italics added.)

---

easily assert, as Hosseini in effect has, that a judgment without a final declaration of disclosure is automatically reversible, regardless of whether the issue was raised. Because we hold, following our state constitution, that there must be some reasonably specific articulated showing of a miscarriage of justice, at least on the appellate level if not earlier, we are spared the academic problem of whether failure to raise the issue prior to entry of judgment waives it.

Witkin explains that the constitutional provision was enacted in reaction to the perception, in the early 20th century, that too many courts were reversing in both civil and criminal cases "where the judgment was clearly right and the error was nonprejudicial." (9 Witkin, Cal. Proc. (4th ed. 1997) Appeal, § 408, p. 460.)

■ The California Constitution trumps any conflicting provision of the Family Code. (*Associated Home Builders etc., Inc. v. City of Livermore* (1976) 18 Cal.3d 582, 595 [135 Cal.Rptr. 41, 557 P.2d 473]; see generally *Marbury v. Madison* (1803) 5 U.S. 137 [2 L.Ed. 60].) It is not enough to say, Canute-like, that a given procedural failure is not "harmless error." Saying it isn't so doesn't make it not so. Indeed, such an approach could nullify anything in the Constitution simply by fiat. Suppose a law were passed requiring each edition of a daily newspaper's editorial page to first be submitted to the press office of the executive or legislative branches. It would not be any less unconstitutional if the law came with the words, "This requirement is not a prior restraint on freedom of speech."

■ To the degree, then, that section 2107, subdivision (d) is read for the proposition that a judgment must be set aside or a new trial granted solely because of a failure to exchange final declarations of disclosure, it is not consistent with our state's Constitution.

Additionally, to the degree that section 2107, subdivision (d) is read for that proposition, it is also (a) inconsistent with at least one other statute which is part of the same scheme, and (b) anomalous in its effect when read together with another.

First, such a reading of section 2107, subdivision (d) is directly inconsistent with section 2105, subdivision (c). The latter provides: "In making an order setting aside a judgment for failure to comply with this section, the court may limit the set aside to those portions of the judgment *materially affected* by the nondisclosure." (Italics added.) The idea of material effect by reason of nondisclosure cannot be squared with the proposition that a judgment not materially affected at all by nondisclosure must be set aside.

■ Second, such a reading of section 2107, subdivision (d) creates a perverse anomaly when compared to subdivision (a) of the same section. The anomaly arises because of the right conferred by the latter statute on parties who *comply* with the disclosure requirements to compel *non*complying parties to prepare an "appropriate declaration of disclosure or further particularity." (§ 2107, subd. (a).) Case law has held that this right is restricted to parties who themselves comply with the disclosure requirements. (*Elden v. Superior Court* (1997) 53 Cal.App.4th 1497, 1510–1511 [62 Cal.Rptr.2d 322].) To read

subdivision (d) of the same statute to mean that a *non*-complying party can unilaterally undo a judgment after trial when he or she would have to comply to obtain disclosure before trial creates a most perverse set of incentives: As apparently happened in the case before us, a party could *deliberately* not comply with disclosure requirements, keep mum, see if the trial results in an acceptable judgment, and then have the opportunity to obtain a better result by pulling the non-disclosure card out of his or her sleeve on appeal or new trial motion. That is the sort of absurdity of statutory result that courts simply do not countenance. (E.g., *Unzueta v. Ocean View School Dist.* (1992) 6 Cal.App.4th 1689, 1701 [8 Cal.Rptr.2d 614] [even panel otherwise disposed not to find absurdity where statute allowed backpay for a teacher suspended after arrest for use of cocaine did find absurdity in interpretation of statute that allowed teacher to keep both backpay and earnings from other employment].)

■ It is an established canon of statutory construction that statutes must be construed, if possible, to render them constitutional. (E.g., *Hutnick v. United States Fidelity and Guaranty Co.* (1988) 47 Cal.3d 456, 466 [253 Cal.Rptr. 236, 763 P.2d 1326]; *California Housing Finance Agency v. Elliott* (1976) 17 Cal.3d 575, 594 [131 Cal.Rptr. 361, 551 P.2d 1193].) Statutory schemes must also be read as a whole, harmonizing their provisions. (E.g., *Dustin v. Superior Court* (2002) 99 Cal.App.4th 1311, 1320 [122 Cal.Rptr.2d 176]; *Board of Retirement v. Santa Barbara County Grand Jury* (1997) 58 Cal.App.4th 1185, 1189 [68 Cal.Rptr.2d 607].) ■ To harmonize section 2107, subdivision (d) with both the state Constitution *and* section 2105, subdivision (c) and section 2107, subdivision (a), we are forced to conclude that before section 2107, subdivision (d) can be the basis of reversal on appeal or a ground to *compel* the granting of a new trial, a noncomplying litigant must identify some portion of the judgment materially affected by the nondisclosure. (See also Code Civ. Proc., § 475 [no judgment shall be reversed by reason of non-prejudicial error, and the burden is on the appellant to show that the error was in fact prejudicial].) The bottom line is that the statement in section 2107, subdivision (d) that a failure to comply with the final disclosure requirements is not "harmless error" must give way to the Constitution and the balance of the legislative scheme.

■ In the present case, Hosseini has not attempted to identify any part of the judgment where she has suffered loss because of the non-exchange of final disclosure statements.[4] It is therefore not a legitimate basis on which to reverse this judgment or the order denying the new trial motion.

---

[4] This court requested supplement letter briefing on the issue of the constitutionality of section 2107, subdivision (d). Hosseini's letter brief, as well as her opening brief, conspicuously fails to mention how Hosseini was prejudiced in any way by the nondisclosure.

### C. *Child Custody and Visitation*

The February 28, 2002 judgment of the trial court awarded sole legal and physical custody of the couple's son John to Hosseini and sole legal and physical custody of the couple's son Shah to Steiner. In her brief Hosseini particularly laments the separation of the two siblings.

 Keeping siblings together *is* no doubt a weighty factor in the calculus of custody, but not a dispositive one. A trial judge must also take into consideration which parent, as primary custodian, will best facilitate a good relationship with the other parent. (See Fam. Code, § 3020, subd. (b) ["it is the public policy of this state to assure that children have frequent and continuing contact with both parents"]; *In re Marriage of Moschetta* (1994) 25 Cal.App.4th 1218, 1234 [30 Cal.Rptr.2d 893] ["It is common knowledge among family law practitioners that the quickest way for a parent to lose primary physical custody is for that parent to obstruct the visitation rights of the other parent."].)

On that score, the trial judge's decision to separate the siblings was within reason. In a previous appeal (*In re Marriage of Steiner* (June 30, 2003, G029404) [nonpub. opn.]) upholding monitored visitation between Hosseini and the younger son, we found substantial evidence that Hosseini had "poisoned" the relationship between Steiner and his elder son, and that custody of the younger son was perhaps the only way to prevent that kind of alienation from occurring with the younger son. That appeal has been long since final. At this point, Hosseini is collaterally estopped to contest the issue of the basis on which the decision to award physical custody of the younger son to his father was made; the same issue is dispositive of the question of primary custody as well.

### D. *Motion for New Trial*

Hosseini argues that the trial court abused its discretion by denying her motion for new trial for being untimely because she did in fact comply with the 15-day deadline of section 659 of the Code of Civil Procedure to submit a notice of intention to move for new trial.

However, Hosseini overlooks her failure to comply with the 10-day requirement rule 236.5 of the California Rules of Court to file a memorandum in support of the motion. Thus while Hosseini filed her intention to move for new trial on March 27, 2002 (timely, given a March 15 filing date for the judgment), she did not file her memorandum of points and authorities in support of the motion until April 19, 2002. That alone would justify the trial court's decision as within the bounds of its discretion, not to mention the fact

that Hosseini had clearly sat on her right to ask for a new trial for over a year. Clearly, the time to bring any problems in the trial to the trial court's attention was in November 2000, when Judge Mandel could have corrected them. (See *Abbott v. Mandiola* (1999) 70 Cal.App.4th 676, 677–678 [82 Cal.Rptr.2d 808] [noting that certain pairs of proceedings, like trials and new trial motions, should, if at all possible, be heard by the same judge].)

### E. *Other Issues*

Hosseini's arguments concerning the property and financial issues (apart from the disclosure argument) are all based on credibility determinations made by the trial judge. Essentially she reargues the trial level evidence. (As mentioned above, there is no attempt to tie any perceived harmful result to the absence of a final declaration of disclosure.) At best we are given a nice compendium of all of Steiner's alleged lies in the reply brief.[5]

Since Hosseini has failed to summarize the evidence adduced by the other side, she has waived any issues in that regard. (See *Toigo v. Town of Ross* (1998) 70 Cal.App.4th 309, 317 [82 Cal.Rptr.2d 649] ["When appellants challenge the sufficiency of the evidence, all material evidence on the point must be set forth and not merely their own evidence. . . . Failure to do so amounts to waiver of the alleged error . . . ."].)

### IV. DISPOSITION

The judgment is affirmed. To the degree that the respondent's brief requests sanctions on the theory that the appeal is frivolous, the request is denied. Each side, in fact, shall bear its own costs on appeal.

Rylaarsdam, J., and Bedsworth, J., concurred.

Appellant's petition for review by the Supreme Court was denied August 11, 2004. Kinnard, J., was of the opinion that the petition should be granted.

---

[5] Hosseini's motion to file a late reply brief is granted.