Filed 8/18/16  Marriage of Zellet CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| In re Marriage of DONALD and MARILYN ZELLET. | 2d Civil No. B268640 (Super. Ct. No. 1343575) (Santa Barbara County) |
| DONALD ZELLET,<br><br>    Appellant,<br><br>v.<br><br>MARILYN ZELLET,<br><br>    Respondent. | |

Donald Zellet and Marilyn Zellet were married for 35 years.[1]  After they separated, Donald received $1,056,000 from a community property investment.  Without Marilyn's knowledge or approval, he spent most of the money on the parties' three adult children and other expenses.  The trial court found that Donald had violated the automatic temporary restraining orders (ATROs) and ordered him to pay Marilyn her half of the investment, along with her attorney fees and costs.  It also rejected his belated request for spousal support.  We affirm.

---

[1] Hereafter, we refer to the parties by their first names to avoid confusion.  No disrespect is intended.

FACTS AND PROCEDURAL BACKGROUND

Donald and Marilyn separated on May 1, 2005. Donald petitioned for dissolution on May 17, 2010. The summons served with the petition contained the ATROs, restraining both parties "from transferring, encumbering, hypothecating, concealing, or in any way disposing of any property, real or personal, whether community, quasi-community, or separate, without the written consent of the other party or an order of the court, except in the usual course of business or for the necessities of life . . . ." (Fam. Code, § 2040, subd. (a)(2);[2] see *Goold v. Superior Court* (2006) 145 Cal.App.4th 1, 3.)

During the marriage, Donald invested in an offshore joint venture known as "Pagoda." In April 2011, Donald received a distribution of $1,056,000 from the Pagoda venture. Donald immediately gave Marilyn $110,000 in cash and a car, which had a value of $25,000. He told her he had not received the full amount and implied that he was being generous by giving her the $110,000.

At trial, Marilyn testified that she repeatedly asked Donald, orally and in writing, for her half of the proceeds in cash. Donald refused, responding instead "I'll take care of you' or 'don't be a brat' or 'perhaps the b word won't come up.'" Donald admitted he was "not too sure exactly when or even if [he] gave her details of how much money [he] had as it was going along." He testified, "I know that she knew that there was a sale and I know she knew the total of what I was going to get . . . and it was there for her to know." But when asked when Marilyn learned the details of the Pagoda transaction, he responded, "You got me. I don't know." The trial court found Donald's testimony "to be evasive and to lack credibility."

Donald conceded that if he had read the ATROs and had not "forgotten about the divorce" he started, "Marilyn would have gotten half right away." Instead, he spent all the remaining Pagoda proceeds on gifts for the parties' adult children and on "multiple vehicles, out of country trips, prepayment of rent, losses from ill-advised

_____

[2] All further statutory references are to the Family Code.

investments and a lavish lifestyle." Marilyn knew that Donald was spending money, but testified that what he did with his money was his business and that she did not delve into the finances of her adult children.

The issues at trial primarily involved the distribution of the Pagoda proceeds and spousal support. The trial court found that Donald not only violated the ATROs, but that he had also breached his fiduciary duties to Marilyn. In so ruling, the court rejected his claims of equitable estoppel and laches. Among other things, it determined that "Donald does not have clean hands. Despite being on notice of Marilyn's request for her half of the Pagoda money, he failed to communicate with her about the amount of money and the distributions, including to the parties' adult children, a former girlfriend who had loaned him money and purchases of annuities." The court ordered that Donald pay Marilyn the sum of $395,500, plus a portion of any future distributions from the Pagoda venture.

Donald's petition for dissolution did not seek spousal support. He requested it for the first time in his trial brief. Notwithstanding the untimely request, the trial court weighed the spousal support factors in section 4320 and rejected his claim based on those factors. It also found that his request was barred by the doctrines of laches, waiver and estoppel, concluding that "Donald breached his fiduciary duty to Marilyn by violating the [ATROs]" and "by not disclosing the amount of the [Pagoda] money to her or giving her an accounting of how it was being spent and failing to give her the community property share to which she was entitled."

The trial court granted Marilyn's request for $20,113.09 in attorney fees and $2,527.30 in costs. It found that because Donald had failed to fully and accurately report income, assets and obligations, he was liable for such fees and costs under section 2107, subdivision (c). Donald appeals.

## DISCUSSION

### Equitable Estoppel

Donald contends the trial court committed reversible error by rejecting the defense of equitable estoppel as a bar to Marilyn's recovery of half of the Pagoda

3

proceeds. He maintains that her knowledge of the expenditure of those proceeds makes it "intolerably unfair" for her to claim her share. We disagree.

"Generally speaking, four elements must be present in order to apply the doctrine of equitable estoppel: (1) the party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel had a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury. [Citations.]" (*Driscoll v. City of Los Angeles* (1967) 67 Cal.2d 297, 305.) "Where, as here, the facts are disputed, we test determinations as to equitable estoppel based on the substantial evidence standard. [Citation.]" (*In re Marriage of Kelkar* (2014) 229 Cal.App.4th 833, 847.) Under that standard, we accept as true all evidence tending to establish the correctness of the trial court's findings and resolve every conflict in favor of the judgment. (*Burquet v. Brumbaugh* (2014) 223 Cal.App.4th 1140, 1143.)

The trial court found that Marilyn was not fully apprised of the facts concerning Donald's expenditure of her share of the Pagoda proceeds until two years after the money was received. Although Donald claims that she knew that various purchases were being distributed to their children, that knowledge does not establish that she knew he was spending her money rather than his own. She believed he was spending his share. Moreover, Donald conceded he was "not sure exactly when or even if [he] gave her details of how much money [he] had as it was going along." And when he was asked if Marilyn knew of the accounting of the proceeds, Donald responded, "You got me. I don't know." The court found Donald "purposefully kept [Marilyn] in the dark by his own admissions," and refused to "reward" him for his "deceptive conduct." Substantial evidence supports these findings.

*Laches*

Donald contends that Marilyn waited too long to assert her claim to the Pagoda proceeds and, as a result, her claim is barred by the doctrine of laches. He argues that she purposely waited to assert the claim until after the funds had been spent. As discussed above, this assertion is not supported by the record. Marilyn was aware that

4

Donald was spending money, but "testified that what he did with his money was his business and that she doesn't delve into the finances of her adult children."

In any event, a party seeking to assert an equitable defense such as laches must come into the court with "clean hands." (13 Witkin, Summary of Cal. Law (10th ed. 2005) Equity, § 9, p. 289; *In re Marriage of Cutler* (2000) 79 Cal.App.4th 460, 479.) "This maxim is far more than a mere banality. It is a self-imposed ordinance that closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief . . . ." (*Precision Instrument Mfg. Co. v. Automotive Maintenance Machinery Co.* (1945) 324 U.S. 806, 814.)

Here, the trial court found that "Donald does not have clean hands." Even though Donald was on notice of Marilyn's request for half of the Pagoda proceeds, "he failed to communicate with her about the amount of money and the distributions, including to the parties' adult children, a former girlfriend who had loaned him money and purposes of annuities, in violation of the [ATROs]." This evidence of wrongdoing justified rejection of the laches defense.

*Spousal Support*

Donald contends the trial court abused its discretion by failing to award him spousal support and by terminating jurisdiction to award it. (See *Marriage of Lim & Carrasco* (2013) 214 Cal.App.4th 768, 773 [standard of review for spousal support determinations is abuse of discretion].) Marilyn responds that the trial court properly found that Donald's request for spousal support was barred by the doctrine of laches, waiver and estoppel. Marilyn is correct.

The doctrine of laches requires "'unreasonable delay plus either acquiescence in the act about which plaintiff complains or prejudice to the defendant resulting from the delay.' [Citation.]" (*Johnson v. City of Loma Linda* (2000) 24 Cal.4th 61, 69.) The trial court found that "Marilyn did not have notice that Donald was requesting spousal support for five years until the eve of trial. Had she known, she may have retained counsel earlier and/or conducted discovery." This five-year delay and resulting prejudice to Marilyn substantiate the court's denial of spousal support.

5

'"Waiver is the intentional relinquishment of a known right after knowledge of the facts.' [Citations.]" (*City of Ukiah v. Fones* (1966) 64 Cal.2d 104, 107.)  When Donald filed his petition for dissolution, he was aware of the right to request an award of spousal support because he asked the trial court to terminate spousal support as to Marilyn.  He had numerous opportunities to seek an award of spousal support over the next five years, yet chose not to do so.  The court did not abuse its discretion by determining he had waived his right to seek such support.

The elements of equitable estoppel also are present.  The purpose of the petition for dissolution is to alert the respondent as to the issues the petitioner intends to raise.  Because Donald did not raise the issue, Marilyn was justified in believing that Donald would not be seeking spousal support and that she had no need to prepare for the issue at trial.  Accordingly, Donald was estopped from pursuing the issue.

Even if the issue were properly raised, Donald failed to establish his entitlement to spousal support under section 4320.  Subdivision (d) of that section requires that the trial court base a spousal support award on the "needs of each party based on the standard of living established during the marriage."  The trial court found that there was no evidence presented on the parties' standard of living during the marriage.  Without that evidence, the court could not properly weigh the section 4320 factors.  (See *In re Marriage of Cheriton* (2001) 92 Cal.App.4th 269, 302-304 ["the marital standard of living is relevant as a reference point against which the other statutory factors are to be weighed"].)

In addition, section 4320, subdivision (n) requires the trial court to consider "[a]ny other factors the court determines are just and equitable."  The court found that "[u]nder the unique circumstances of this case, neither party is entitled to an award of spousal support."  The court specifically cited Donald's breach of fiduciary duties in violating the ATROs and in failing to disclose the amount of the Pagoda proceeds, to give Marilyn her community property share and to provide an accounting of how the money was being spent.

6

Finally, Donald contends the trial court abused its discretion by terminating jurisdiction to award spousal support. It is true that "after a lengthy marriage, when factors such as age and poor health may inhibit a supported spouse's ability to become self-supporting notwithstanding good faith efforts, it is an abuse of discretion to terminate support and jurisdiction unless the evidence shows the spouse can be self-supporting. [Citations]." (*In re Marriage of Heistermann* (1991) 234 Cal.App.3d 1195, 1201 & fn.8.) This rule does not apply here because the trial court found that the parties are self-supporting. (See *In re Marriage of Prietsch & Calhoun* (1987) 190 Cal.App.3d 645, 664.) Substantial evidence established that both parties have their own earnings, are receiving Social Security benefits, have received rental income from a son and were entitled to one-half of the $1,056,000 in Pagoda proceeds. Under these circumstances, the trial court appropriately terminated jurisdiction to award spousal support.

*Marilyn's Request for Attorney Fees and Costs*

The trial court awarded Marilyn her attorney fees and costs under section 2107, subdivision (c).[3] Citing *In re Marriage of Fong* (2011) 193 Cal.App.4th 278, the court found that Marilyn was entitled to fees and costs because Donald "failed to comply with his fiduciary obligation to [Marilyn] to fully and accurately report income, assets and obligations." Donald contends the award must be reversed because it was based on an outdated income and expense declaration.

Donald relies upon section 2107, subdivision (d), which states that only a party that is in compliance with their own financial disclosures may request that the court impose monetary sanctions, including reasonable attorney fees and costs under subdivision (c). Donald argues Marilyn is a "non-complying" party because she did not

_____

[3] Section 2107, subdivision (c) provides: "If a party fails to comply with any provision of this chapter, the court shall, in addition to any other remedy provided by law, impose money sanctions against the noncomplying party. Sanctions shall be in an amount sufficient to deter repetition of the conduct or comparable conduct, and shall include reasonable attorney's fees, costs incurred, or both, unless the court finds that the noncomplying party acted with substantial justification or that other circumstances make the imposition of the sanction unjust."

7

serve a final declaration of disclosure or a "current" income and expense declaration under section 2107. Section 2107, subdivision (d) states specifically that "[t]he failure to comply with the disclosure requirements does not constitute harmless error." This provision superseded prior case law affirming judgments under a "harmless error" standard despite a violation of the disclosure statutes. (See *In re Marriage of Steiner & Hosseini* (2004) 117 Cal.App.4th 519, 526 (*Steiner*).)

But statutes cannot preempt constitutional requirements. Pursuant to the California Constitution, no judgment may be set aside or new trial granted unless there has been a miscarriage of justice. (Cal. Const. art. VI, § 13; *Steiner*, *supra*, 117 Cal.App.4th at p. 526 ["The California Constitution trumps any conflicting provision of the Family Code"].) Thus, notwithstanding section 2107, subdivision (d), a party seeking set-aside relief or reversal on appeal for noncompliance with the statutory disclosure requirements, must show some prejudice as a result of the nondisclosure. In other words, the party seeking to set aside the judgment must identify some portion of the judgment materially affected by the nondisclosure. (*In re Marriage of Kieturakis* (2006) 138 Cal.App.4th 56, 92; *Steiner*, *supra*, 117 Cal.App.4th at pp. 525-528 & fn. 3 [holding that in the absence of "some reasonably specific articulated showing of a miscarriage of justice," the parties' failure to exchange final declarations of disclosure did not constitute reversible error].)

Donald bears the burden, therefore, of showing on appeal "'exactly how the error caused a miscarriage of justice . . . .'" (*In re Marriage of Dellaria* (2009) 172 Cal.App.4th 196, 205; *Steiner*, *supra*, 117 Cal.App.4th at p. 526.) Donald has not met this burden. He has not shown that any portion of the attorney fees and costs award was materially affected by Marilyn's failure to submit a current disclosure declaration at trial or that there was any miscarriage of justice. The trial court made the award based not on need, but rather on Donald's violation of the ATROs and breach of his fiduciary duties to Marilyn. In fact, it was these acts that necessitated the time and expense of a trial. We reject his contention that noncompliance with the current disclosure requirement constitutes reversible error.

8

*Donald's Request for Attorney Fees and Costs*

Donald argues that the trial court erred by denying his request for attorney fees and costs under section 271, which authorizes an award of fees and costs as a sanction for uncooperative conduct that frustrates settlement and increases litigation costs. (See *In re Marriage of Fong*, *supra*, 193 Cal.App.4th at p. 291.) The decision whether to award fees and costs under this section is reviewed for abuse of discretion. (*In re Marriage of Corona* (2009) 172 Cal.App.4th 1205, 1225.)

Donald has not demonstrated an abuse of discretion. Although the trial court did not expressly rule on Donald's request, it must be presumed that the trial court intended to deny his request for attorney fees and costs because he had violated the ATROs and breached his fiduciary duties to Marilyn. It was his conduct, not Marilyn's, which the court found to be uncooperative. Indeed, it was his conduct that led to a two-day trial when he refused to provide any accounting regarding the Pagoda proceeds or to stop spending Marilyn's half of the proceeds. Given these findings, it would be inequitable to require Marilyn to pay his fees and costs.

DISPOSITION

The judgment is affirmed. Respondent shall recover her costs on appeal.

NOT TO BE PUBLISHED.


PERREN, J.


We concur:


GILBERT, P. J.


TANGEMAN, J.

9

Donna D. Geck, Judge

Superior Court County of Santa Barbara

_____


Helen Crawford Zajic for Appellant.

The Law Offices of Matthew J. Long, Matthew J. Long and Guneet Kaur for Respondent.