Filed 11/25/20  Marriage of Mohsenin CA1/2

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re Marriage of DARIUS MOHSENIN and DENISE MOHSENIN. | |
| DARIUS MOHSENIN,<br><br>        Appellant,<br><br>v.<br><br>DENISE MOHSENIN,<br><br>        Respondent. | A156151<br><br>(San Mateo County<br>Super. Ct. No. FAM0101613) |

Darius Mohsenin appeals from orders setting aside three interspousal transfer grant deeds and finding he breached his fiduciary duty to his former wife as to one of the three deeds.  He contends the orders must be reversed because they were based on speculation rather than substantial evidence, and because the parties failed to file, or stipulate to the mutual waiver of, final declarations of disclosure.  We affirm.

# BACKGROUND

The parties married on October 14, 1989. Denise[1] filed a petition for dissolution of marriage in November 2008,[2] and marital status was terminated as of December 31, 2009. The parties' four children were 16, 14, 9, and 7 years of age when the petition was filed.

During the marriage, Darius worked as a systems engineer at various defense companies until 2006, and also purchased, rehabilitated and managed real estate. By Darius's description, the real estate work was his " 'second' career," culminating in his managing nine income-producing properties in various parts of the country; he also had a " 'third' job" managing his parents' commercial real estate investments; and he chose to leave his employment as an engineer in order to focus his efforts on the real estate business. By Denise's description, Darius chose to leave his job because he made enough money through the rental properties that he "didn't need to work." She testified the couple "jointly had purchased property together" that generated $400,000 to $600,000 per year. Denise did not work outside the home during the marriage. Darius was responsible for the family finances.

Three properties are at issue on this appeal. Two were purchased by Darius before the marriage: A single family residence on South Bernardo Avenue in Sunnyvale, where the parties lived for the first years of their marriage, and a triplex in Locust Street in Santa Cruz. After the parties married, Denise was put on the titles to these properties, and they were

---

[1] We refer to the parties by their first names for clarity. No disrespect is intended.

[2] Denise testified that the parties separated in June or July of 2009; the date of separation stated in the petition and response was October 30, 2008.

2

subsequently transferred into the parties' living trust as community property.  Most of the mortgage payments for the properties were made with community property funds.  On August 2, 2005, Denise executed interspousal transfer grant deeds transferring each of the properties to Darius alone.  At the time of the hearing, title to the properties was held by Persepolis Capital Partners, LLC (Persepolis), an entity created by Darius.[3]  Denise was not an owner or officer of Persepolis.

The third property at issue is an apartment building on Leisure Way in Vacaville, which the parties purchased during the marriage, in joint ownership.  Denise testified that she "discovered" she had signed an interspousal deed transferring the Leisure Lane property to Darius; she did not know whether it was signed on the same day as the deeds for South Bernardo Avenue and Locust Street.  Denise thought title was held by Persepolis at the time of trial but Darius testified it was in his name, explaining the property had been in the limited liability company (LLC) but the lender discovered Darius had transferred title to the LLC, which was "a default under the loan," and required him to transfer it back.

Denise testified that she did not read the interspousal deeds for the three properties at the time she signed them because she trusted Darius.  As to all three, she testified that Darius made the appointment with the notary and told her to attend, that at the time she signed, no one explained she was relinquishing an ownership interest in the property, and that she did not intend to transfer her ownership interest.  With respect to the South Bernardo Avenue deed, Denise testified that Darius asked her to transfer the title to him to facilitate moving it to an LLC he was going to set up for their

---

[3] Denise and her attorney referred to the LLC as "Persetolis"; Darius testified the name was Persepolis Capital Partners LLC.

3

properties. Asked if the LLC was ever set up, Denise said "no"; she testified that she repeatedly asked Darius about this, because she was concerned about her name not being on the property, and he told her it did not matter because the property "was ultimately a community property."

As to the Leisure Way deed, Denise testified that when she would ask why they were going to the notary, Darius "almost always said we were refinancing." Denise frequently signed documents relating to the properties because "Darius was always pulling them in and out of the trust to refinance." She usually did not read the documents because "I would ask him and he would tell me usually what they're for and I trusted him." Asked, with reference to the South Bernardo Avenue and Locust Street deeds, "[s]o, on that day you signed at least two interspousal deeds, correct?" Denise responded, "It appears so, yes."

Denise testified that she did not know how the Leisure Way apartments were taken out of joint ownership but described what she thought had happened. She said there were "a couple of times" when Darius asked her to meet him at a place like Mailbox Et Cetera on very short notice because he was refinancing a property, and she was in a hurry to get to something with the children; he "held the papers and curled them back" so she could see only the signature line, and she just signed and left. She testified that one occasion in 2005 or 2006 stood out because they had previously gone to the credit union where the woman they worked with would tell her what a document was and she would then sign; this time, there was a young woman who did not touch the papers.

Asked what she intended to accomplish by signing the deeds, Denise testified, "I trusted him and he always told me we were transferring property out of trust. When you transfer out of a trust, the people on the trust both

4

have to sign and it has to come out of the trust to be refinanced—refinanced then put back in the trust. That's, like, two layers, possibly three layers of notary. This often happened. This is what I was told I was doing."

Darius testified he was present when Denise signed the interspousal deeds for South Bernardo Avenue and Locust Street, but did not have a discussion with her when she signed them.[4] He testified that he had previously told her there were interspousal deeds they needed to execute for these properties and the Leisure Way one, saying there were "a series of discussions, slash, arguments." Darius believed they had an understanding that she was signing the deeds "in the interest of preserving the properties for our children." He testified that he had told her he was going to transfer title to all three properties to an LLC for "asset protection" and as "a vehicle . . . to add my children who eventually would inherit the properties" and "receive the benefits of them at any time by virtue of being members on the LLC." The LLC he created was Persepolis, and he noted that he added his almost 18-year-old son to the membership as well as himself. Asked if he told Denise he had created the LLC he said "I believe so. Certainly secretary of state mailing was coming to the house."

Darius further testified that the parties had a "tacit" agreement for Denise to transfer the three properties to him as his sole and separate

---

[4] The reporter's transcript reflects that at this point Darius's attorney's questions referred to August 5, 2012, as the date the interspousal deeds were executed. The trial court's decision refers to August 5, 2012, as the date of execution of the deed for the South Bernardo Avenue property, but 2006 for the Locust Street and Leisure Way properties. The error is not explained by the record or parties.

5

property because she was having an affair. Denise acknowledged the affair but denied it influenced her signing the deeds.[5]

In 2006, Darius borrowed $800,000 from his parents to purchase a building in Las Vegas, and recorded a promissory note securing the loan with the Locust Street property. He did not consult with Denise before borrowing these funds. In 2011, he borrowed an additional $300,000 from his family to repair the Locust Street property after a fire, again securing the loan with the property, but not recording the note. He did not consult with Denise before transferring the Locust Street property to Persepolis. The rents generated by the property were deposited into an account held by the Redbook Residential Group, a company owned by Darius, his father and his

---

[5] In his closing argument brief in the trial court, Darius asserted four reasons for the interspousal transfer of the properties to him as his sole and separate property: Darius's parents loaned the parties $250,000 to purchase their family home in Woodside while Denise's parents contributed nothing; Darius purchased the South Bernardo Avenue and Locust Street properties prior to marriage and "managed them while working full time plus at various defense contractor jobs with no help from" Denise; Denise "had an extramarital affair with a wealthy serial-entrepreneur . . . which she believed would end in marriage following divorcing Husband" and "expressed concern for [Darius's] need for supplemental and retirement income as a result of all the hard work and non-community monies invested in the properties and felt moral obligation to transfer rental properties to [Darius] given that she would enjoy equal or better financial security with new spouse"; and Darius "was solely responsible for mortgages on all rental properties. [Denise] was never on any of the loans for 324 Locust, 1078 S. Bennardo, and 200 Leisure Way. [Darius] held all of the liability."

The record reflects claims by each of the parties of harassing and abusive behavior by the other, including a 2010 request for restraining order by Denise that resulted in a stipulation and order for no harassment and no contact by Darius. Denise testified she was arrested for domestic violence against Darius in 2008, but was not charged.

6

five siblings. Darius testified this was to pay down the debt to his family and he believed there was no community interest in the Locust Street property.

Denise testified that the parties were joint owners of a bank account named "Heritage Apartments" into which rents from the Leisure Way apartments, South Bernardo Avenue and Locust Street were deposited, and that Darius took her off the account in 2009 or 2010 and had been ordered to put her back on but had not done so. She testified that Darius used money in this account to purchase a number of properties in his name alone, without consulting her. Darius's testimony detailed six properties he purchased during the marriage with community property funds, without consulting Denise, taking title in his name alone; these properties were subsequently lost in foreclosure.[6] He testified that the community property funds used to purchase properties, including a $2 million down payment for a $7 million property in Las Vegas, came from prior successful transactions; the transactions were for the benefit of the community and the children. Asked why he put the properties in his name alone, he testified that Denise "made it clear she wanted nothing to do with this parallel real estate investment career I developed"; he testified, "one famous quote was, 'I want nothing to do with these crummy rental properties.'" Denise testified that the only time she told Darius she did not want to be informed about the rental properties was in connection with an argument about how she was handling calls about apartment rentals, during which she told Darius she did not want to answer

---

[6] One of these, in San Andreas, Darius testified he did discuss with Denise prior to purchase, and Denise testified that title to this property was held jointly but she did not know about the foreclosure before trial. Another, in Malibu, was the subject of an interspousal transfer deed dated March 27, 2006: At trial, Denise acknowledged her signature on the deed but did not remember signing it.

the calls if he was not going to keep her informed about the status of the rentals.[7]

Denise testified that she ran a credit check when she filed for divorce and discovered 50 credit cards in her name that she had not taken out. When she asked Darius about this, he said "it was a common practice in marriage that the husband does things like that." Darius acknowledged having taken out a Virgin America credit card in Denise's name, without her knowledge. He testified he was concerned about her credit worthiness because he was "continually getting calls for payments on her credit card" and wanted to test whether her credit was so damaged that she would be rejected on a new card application.

Darius testified that he applied for a loan for his daughter's college expenses in Denise's name, using her social security number and income information, because the financial aid documents required the custodial parent's name and Denise was not being cooperative. Denise testified she did not give permission for him to make this application.

The trial court delivered its tentative decision and statement of decision on the record, and subsequently signed a "Statement of Decision" prepared by Denise's counsel. The court found that Denise did not understand the nature of the deeds she signed for the three properties, set the deeds aside, and found the three properties to be community property assets. The court further found that Darius breached his fiduciary duty to

---

[7] Denise testified that when the Leisure Way apartment manager was not available, calls would be forwarded to the family residence, where Denise would answer and take messages regarding apartment rentals. At some point, she told Darius to take an ad out of the newspaper, as she was continuing to get calls after a vacancy had been filled and was telling the callers the apartment had been rented; Darius was angry because apartments would be coming up for rent at the end of the month.

Denise with respect to the Leisure Way property.[8] The court also found Darius breached his fiduciary duty to Denise by using Denise's name, social security number and income to obtain loans for their daughter's college expenses in Denise's name alone, and held the loans to be Darius's sole and separate debt. The court found the $800,000 and $300,000 loans from Darius's parents were obtained without Denise's knowledge and assigned them as Darius's sole and separate debt. The court's other orders are not relevant to the issues on appeal.

## DISCUSSION

### I.

Darius argues the orders setting aside the three deeds and finding breach of fiduciary duty as to the Leisure Way deed were not supported by evidence and improperly based on speculation. "[W]e consider the evidence in the light most favorable to the trial court's ruling and review the trial court's factual determinations under the substantial evidence standard. [Citation.]" (*In re Marriage of Kamgar* (2017) 18 Cal.App.5th 136, 144, quoting *Baker v. Osborne Development Corp.* (2008) 159 Cal.App.4th 884, 892.) "Our sole inquiry is 'whether, on the entire record, there is *any* substantial evidence, contradicted or uncontradicted,' supporting the court's finding. (*Howard v. Owens Corning* (1999) 72 Cal.App.4th 621, 631.) 'We must accept as true all evidence . . . tending to establish the correctness of the trial court's

---

[8] The trial court did not make orders regarding disposition of the three real properties at issue here and noted, it "will still be arguable on behalf of both attorneys how much the breach of fiduciary duty is worth," in that Denise "will ask for the entire Vacaville property to be awarded to her and, of course, [Darius's attorney] will argue the opposite." Darius represents that in December 2019, the parties stipulated to sell the Leisure Way property, and half the proceeds "is held in trust pending determination of the 'value' of the breach and outcome of this appeal."

9

findings . . . , resolving every conflict in favor of the judgment.' (*Ibid.*)" (*Sabbah v. Sabbah* (2007) 151 Cal.App.4th 818.)

Darius points out that the deed for the Leisure Way property was not offered or received in evidence at trial, the date it was executed and place of execution were not established, and there was no proof of the notary who notarized the deed.[9] No documentary evidence was presented as to how title to any of the properties was held prior to execution of the interspousal transfer deeds. This absence of evidence, Darius argues, means the trial court "could not have possibly considered '[a] clear statement in the deed or other documentary evidence of title by which the property is acquired that the property is separate property and not community property' or '[p]roof that the parties have made a written agreement' pursuant to Family Code section 2581."[10]

Section 2581 provides: "For the purpose of division of property on dissolution of marriage or legal separation of the parties, property acquired by the parties during marriage in joint form, including property held in tenancy in common, joint tenancy, or tenancy by the entirety, or as community property, is presumed to be community property. This presumption is a presumption affecting the burden of proof and may be rebutted by either of the following: [¶] (a) A clear statement in the deed or other documentary evidence of title by which the property is acquired that the property is separate property and not community property. [¶] (b) Proof

---

[9] Denise states that a copy of the deed was included in Exhibit 1, which was admitted into evidence at trial. Exhibit 1 is described in the record as "a flash drive with 124 photographs" and is not a part of the record on appeal.

[10] Further statutory references will be to the Family Code except as otherwise specified.

that the parties have made a written agreement that the property is separate property."

Darius does not explain how this statute supports his argument that interspousal deeds should not have been set aside. The statute states a presumption that property acquired in joint form during marriage is community property. According to both parties' testimony, the Leisure Way property was acquired in joint ownership; the other two properties were acquired by Darius prior to the marriage, but Denise was added to the title when the parties married. If, as Darius argues, the trial court "could not have possibly considered" deed language or a written agreement establishing the properties were separate property, the section 2581 presumption of community property would be unrebutted—not the result Darius wishes.

Darius's position seems to be (as he states more clearly in his argument that Denise failed to meet her burden of production in support of her request to set aside the interspousal transfer deeds) that there could not be sufficient evidence to support the trial court's orders without documentary evidence of both the prior titles and the interspousal transfer deeds—despite both parties' agreement as to the contents of all the documents. This argument was never raised in the trial court, when the absence of documentary evidence could have been addressed, and therefore was forfeited. (*Tudor Ranches, Inc. v. State Comp. Ins. Fund* (1998) 65 Cal.App.4th 1422, 1433; *In re Dakota H.* (2005) 132 Cal.App.4th 212, 221–222.)

Darius also challenges the trial court's decision to set aside the interspousal transfer grant deeds based on its finding that Denise did not understand the nature of the documents she signed, without making any findings regarding undue influence. As Darius recognizes, "[a] rebuttable presumption of undue influence arises when one spouse obtains an advantage

11

over another in an interspousal property transaction." (*In re Marriage of Mathews* (2005) 133 Cal.App.4th 624, 630; *In re Marriage of Haines* (1995) 33 Cal.App.4th 277, 297; § 721.) "The presumption of undue influence is regularly applied in marital transactions in which one spouse has deeded property to the other, as in *Haines.* In such cases, it is evident one spouse has obtained an advantage—the deeded property—from the other." (*In re Marriage of Burkle* (2006) 139 Cal.App.4th 712, 730.)

" ' "When a presumption of undue influence applies to a transaction, the spouse who was advantaged by the transaction must establish that the disadvantaged spouse's action 'was freely and voluntarily made, with a full knowledge of all the facts, and with a complete understanding of the effect of' the transaction." [Citation.]' (*In re Marriage of Lund* (2009) 174 Cal.App.4th 40, 55.) The advantaged spouse must show, by a preponderance of evidence, that his or her advantage was not gained in violation of the fiduciary relationship. (*In re Marriage of Haines, supra,* 33 Cal.App.4th at p. 296.) ' "The question 'whether the spouse gaining an advantage has overcome the presumption of undue influence is a question for the trier of fact, whose decision will not be reversed on appeal if supported by substantial evidence.' " [Citation.]' (*Lund,* at p. 55.)" (*In re Marriage of Fossum* (2011) 192 Cal.App.4th 336, 344.)

Although the trial court did not use the term "undue advantage," a finding of undue advantage is implicit in its decision. Its express finding that Denise did not understand the nature of the documents she signed refutes any suggestion that Denise signed the deeds " ' " 'with a full knowledge of all the facts, and with a complete understanding of the effect of' the transaction" ' " (*In re Marriage of Fossum, supra,* 192 Cal.App.4th at p. 344), so as to rebut the presumption of undue influence. Indeed, the trial court

12

found Darius breached his fiduciary duty to Denise with respect to one of the three deeds—and declined to make this finding as to the other properties not because the factual predicate was absent but to ameliorate the harshness of the finding. The trial court was presented with conflicting accounts of how the deeds came to be signed, and expressly found Denise the more credible witness. "The testimony of a single witness may provide sufficient evidence." (*Sabbah v. Sabbah, supra,* 151 Cal.App.4th at p. 823.)

Darius's challenge to the trial court's finding that he breached his fiduciary duty to Denise fares no better. He maintains that the trial court made this finding in the absence of documentary evidence, based on speculation as to "what it believed Darius 'felt' and 'could potentially internally feel.' "

When Denise's attorney asked the trial court why it was finding a breach of fiduciary duty with respect to the Leisure Way deed but not the deeds to South Bernardo Avenue and Locust Street, the court replied, "So I'm trying to give Husband the benefit of the doubt here in the sense that those two pieces of property were his separate property prior to marriage. And it is —it can be extremely punitive and harsh on a party to make a finding of a breach of fiduciary duty. [¶] I acknowledge that Wife was the more credible witness. I believe Husband, in his mind at many various times, felt that he was trying to do what was in the best interests of the community. And so since it is such a harsh finding, I am applying it only to the asset that was community property that was purchased at the time the parties were married versus his two pieces of separate property where he could potentially internally feel that he was entitled to have those Interspousal Transfer Deeds signed. And so I'm not taking it to that level on those two pieces of property."

13

The court's explanation makes clear that it was not relying upon speculation in finding Darius breached his fiduciary duty. Rather, to the extent the court engaged in speculation, "psychological assessment or opinion," as Darius maintains, it was to moderate the consequence of its determination[11]—to give Darius the "benefit of the doubt" by *not* finding a breach of fiduciary duty with respect to the South Bernardo Avenue and Locust Street properties.[12]

## II.

Darius also contends the trial court's orders must be reversed because the parties failed to serve or mutually waive final declarations of disclosure. Parties to a proceeding for dissolution of marriage generally must serve on

[11] The potential remedies for breach of the fiduciary duty by one spouse include "an award to the other spouse of 50 percent, or an amount equal to 50 percent, of any asset undisclosed or transferred in breach of the fiduciary duty plus attorney's fees and court costs, with value of the assets "determined to be its highest value at the date of the breach of the fiduciary duty, the date of the sale or disposition of the asset, or the date of the award by the court. (§ 1101, subd. (g).) When the breach "falls within the ambit of Section 3294 of the Civil Code," the remedies "shall include, but not be limited to, an award to the other spouse of 100 percent, or an amount equal to 100 percent, of any asset undisclosed or transferred in breach of the fiduciary duty." (§ 1101, subd. (h).)

[12] Darius points out that the trial court found only one breach of fiduciary duty regarding the Leisure Way property. To the extent Darius is attempting to suggest the court found only one aspect of his conduct improper, he mischaracterizes the court's view. After the court announced its decision, Denise's attorney asked the court to clarify what the breach of fiduciary duty consisted of, and the court responded, "The breach is having her sign an interspousal transfer deed." Counsel then asked if the subsequent transfer of the property into "his family's trust" was a further breach of fiduciary duty. The court responded, "once he's breached the fiduciary duty taking it out of wife's name, I think that's it. . . . I mean, everything else he does after that is just a continuation of that breach. I don't think it's a separate breach."

14

each other's preliminary and final declarations of disclosure "[i]n order to provide full and accurate disclosure of all assets and liabilities in which one or both parties may have an interest." (§ 2103.) Where a case goes to trial, "unless the parties mutually waive the final declaration of disclosure," the final declaration of disclosure must be served on the other party, along with a current income and expense declaration, no later than 45 days before the first assigned trial date. (§ 2105, subd. (a).) "[I]f a court enters a judgment when the parties have failed to comply with all disclosure requirements of this chapter, the court shall set aside the judgment. The failure to comply with the disclosure requirements does not constitute harmless error." (§ 2107, subd. (d).)

Despite the last quoted provision, however, "the failure on the part of two divorcing spouses to exchange final declarations of disclosure (Fam. Code, § 2105) does not constitute a 'get-a-new-trial-free' card, giving either one of them the automatic right to a new trial or reversal on appeal when there is no showing of a miscarriage of justice. (Cal. Const., art. VI, § 13.)" (*In re Marriage of Steiner & Hosseini* (2004) 117 Cal.App.4th 519, 522 (*Steiner & Hosseini*).) Because "[t]he California Constitution trumps any conflicting provision of the Family Code," "the statement in section 2107, subdivision (d) that a failure to comply with the final disclosure requirements is not 'harmless error' must give way to the Constitution and the balance of the legislative scheme." (*Steiner & Hosseini,* at pp. 527, 528.)

Here, neither party waived service of the final declaration of disclosure, and it does not appear either served a final declaration of disclosure.[13]

_____

[13] Denise concedes there were no waivers, and states that neither party served a final declaration of disclosure. Actually, Denise states neither party "filed" a final declaration or waived such "filing," but as the requirement is

15

Darius asserts that Denise's failure to serve a final declaration of disclosure "is not harmless error, but entirely consistent with the lack of documentary evidence offered and received at trial. Her failure to comply with section 2105 coupled with her failure to satisfy her burden of production support a reversal in this case."

As we have said, Darius forfeited the argument that Denise could not prevail without introducing documentary evidence of all the deeds to the properties at issue, and substantial evidence supports the trial court's findings. Both parties filed income and expense declarations over the course of these proceedings and testified as to their financial circumstances and assets. Darius offers no suggestion how he was prejudiced by Denise's failure to serve a final declaration of disclosure.

## DISPOSITION

The orders are affirmed.

Costs to Denise.

---

for service on the other party, not filing with the court, we assume her terminology is a mistake.

16

_____
Kline, P.J.

We concur:


_____
Richman, J.


_____
Stewart, J.


*In re Marriage of Mohsenin and Mohsenin* (A156151)

17